[No. 3727.   Decided December 17, 1900.]

THE STATE OF WASHINGTON ON THE RELATION OF D. F. CALDERWOOD, *Respondent, v.* FRED SCHOMBER, *as Justice of the Peace for Olympia Precinct, Thurston County, Appellant.*

CRIMINAL LAW—PROSECUTIONS BEFORE JUSTICES OF PEACE—VENUE —CONSTRUCTION OF STATUTE.

The act of March 7, 1899, (Laws 1899, p. 53), providing that "all actions commenced before a justice of the peace shall be brought in the justice court of the precinct in which one or more of the defendants reside," must be construed as applying only to civil actions, since such construction harmonizes with the existing legislation on the subject of civil actions, and avoids any destruction of the uniformity governing trials under our system of criminal procedure; and, so construed, one chargeable with an offense cognizable by a justice of the peace, may, under the provisions of Bal. Code, § 4684, making a justice's territorial jurisdiction co-extensive with his county, be prosecuted before any justice in the county.

Appeal from Superior Court, Thurston County.—Hon. OLIVER V. LINN, Judge.   Reversed.

*George H. Funk,* for appellant.

*W. I. Agnew,* for respondent.

The opinion of the court was delivered by

WHITE, J.—On the 8th day of June, 1900, there was filed with the appellant here, a duly elected and qualified justice of the peace for Olympia precinct, Thurston county, a written complaint, duly verified as required by law, charging the respondent, D. F. Calderwood, with the offense of "assault and battery," committed against the person of one Frank Warner, a child thirteen years of age, the offense being alleged to have been committed in the town of Tenino, Thurston county; that thereupon a war-

rant was issued, the respondent duly arrested and brought before the court upon the said 8th day of June, 1900, and he entered into a bond conditioned for his appearance upon the 12th day of June, 1900, at which time he appeared and demurred to the complaint for want of jurisdiction over him, which demurrer being overruled, he applied to the superior court of Thurston county for a writ of prohibition restraining the said appellant, as justice, from proceeding to try him for the offense of which he stood accused; that the said superior court, on said 12th day of June, 1900, granted an alternative writ of prohibition, returnable on the 14th day of June, 1900, at the hour of ten o'clock, a. m.; that the appellant, in obedience to said alternative writ, appeared before the court upon the date mentioned, and moved the said superior court to quash and dismiss the said alternative writ of prohibition, which motion was denied; that thereupon the said appellant filed his return to the said writ, and the court, after argument, rendered judgment making the said alternative writ of prohibition absolute, and permanently restrained the appellant, as justice from proceeding to try and punish the said respondent for the offense with which he stood accused. From said judgment the appellant prosecutes this appeal.

The controversy in this cause is the result of a "three-line" indiscretion on the part of the legislature. The act of March 7, 1899 (Laws 1899, p. 53), is as follows:

"All actions commenced before a justice of the peace shall be brought in the justice court of the precinct in which one or more of the defendants reside."

The lower court held that this act applied to criminal actions as well as to civil actions, and, inasmuch as it appeared that the respondent was accused of an offense cognizable in justice court, he must, under the terms of this act, be tried before the justice of the precinct where

he claimed his residence, and could not be tried before the appellant, another justice of the same county, even though, as appears in respondent's return, there was no justice in Tenino precinct. Appellant contends that this act was intended to apply solely to civil actions, and that the court is therefore in error in applying it to criminal actions, and, if this error be not corrected, it will have the effect of very seriously incumbering the administration of the criminal law.

Many definitions of the term "action" have been given by the courts. That by Bouvier seems to us to be the most comprehensive. He defines the term thus:

"The formal demand of one's right from another person or party made and insisted on in a court of justice. In a quite common sense, action includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person or party of another in such court, including an adjudication upon the right and its enforcement or denial by the court."

He defines a *civil* action to be:

"Those actions which have for their object the recovery of private or civil rights, or of compensation for their infraction."

He defines a *criminal* action to be:

"Those actions prosecuted in a court of justice, in the name of the government, against one or more individuals accused of a crime."

It will be seen that civil and criminal actions are included within the definition of the term "action." In one instance the demand is made to the court by the individual for an infringement of a private right. In the other the demand is made to the court by the sovereign for the redress of a public injury. The appellant claims that, when the word "action" is used in our statutes, it refers

only to a civil proceeding, and in support thereof cites us to §§ 4793 to 4824, inclusive, Bal. Code. These sections, from the context, clearly refer to civil actions. Section 4793 reads:

"There shall be in this state hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be called a *civil* action."

Here the legislature has used the term *civil* in connection with the term "action." Section 6788, Bal. Code, reads:

"Except as otherwise specially provided by statute, all *criminal* actions shall be commenced and tried in the county where the offense was committed."

Section 6800, Id., reads:

"All the forms of pleadings in *criminal* actions heretofore existing are abolished. * * *"

It would seem from an examination of these statutes that the legislature has, when legislating as to one class, used the term "civil," and when legislating as to the other has used the term "criminal," and has not used the term "action" as applying to civil proceedings alone. There is no doubt that the term "actions," as used in the statute of 1899, is comprehensive enough to include both civil and criminal actions, but should it be given that construction? Where the language of a statute is free from ambiguity and conveys a definite and *sensible* meaning, the courts should not hesitate to give it a literal interpretation. But where different statutes bear upon each other, and they would be rendered inconsistent or absurd or unconstitutional by such literal interpretation, a departure from the obvious meaning of the words is justifiable.

"A statute should be construed with reference to its spirit and reason; and the courts have power to declare

that a case which falls within the letter of a statute is not governed by the statute, because it is not within the spirit and reason of the law and the plain intention of the legislature. This rule was very clearly and positively laid down by the supreme court of the United States in an important case which involved a construction of the so-called "Alien Contract Labor Law." This act of congress prohibits the importation into this country of 'any' foreigners under contract to perform 'labor or service of any kind.' The question arose as to its applicability to a clergyman who came to this country under contract to enter the service of a church as its rector. The court conceded that the case came within the letter of the law, but because it was not within the spirit and intent of the law, it was held that the act had no application to the case at bar. 'It is a familiar rule,' said the court, 'that a thing may be within the letter of the statute, and yet not within the statute, because not within its spirit nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator; for frequently words of general meaning are used in a statute, words broad enough to include the act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.' And speaking to the case at bar: 'The construction invoked cannot be accepted as correct. It is a case where there was presented a definite evil, in view of which the legislature used general terms with the purpose of reaching all phases of that evil; and thereafter, unexpectedly, it is developed that the general language thus employed is broad enough to reach cases and acts which the whole history and life of the country affirm could not have been intentionally legislated against. It is the duty of the courts, under those circumstances, to say that, however broad the language of the statute may be, the act, although within the letter, is not within the in-

37—23 WASH.

tention of the legislature, and therefore cannot be within the statute.'" Black, Interpretation of Laws, p. 48, and cases cited.

If a statute is susceptible of two constructions, one of which would render it constitutional, and the other not, it is to receive the former construction, as presumptively expressing the legislative intent. *Dow v. Norris*, 4 N. H. 16 (17 Am. Dec. 400).

The venue in civil actions under the general statutes of the state depends upon the *situs* of the subject matter or the residence of the parties, or where they may be found, or where the cause arose. See §§4852 to 4855, inclusive; also §§5499 and 5692, Bal. Code. There is no restriction in the constitution as to the power of the legislature to determine the venue in civil actions. In criminal prosecutions it is expressly provided by the constitution that the accused shall "have a speedy public trial by an impartial jury *of the county in which the offense is alleged to have been committed.*" Constitution, art. 1, § 22. The constitution and the general legislation of the state (see §6788, Bal. Code) recognize the universal law in criminal matters, that the place of the commission of the offense charged determines the venue. When the act of 1899 was passed, the law relative to the jurisdiction of justices of the peace was to the effect that the jurisdiction of a justice of the peace should be coextensive only with the limits of the county in which he was elected or appointed. They were also given concurrent jurisdiction with the superior courts in affrays, assault and battery, violation of estray laws, obstruction of highways and bridges, charging extra tolls at ferries and bridges, neglect of roads by supervisors, public indecency, having obscene books and pamphlets for exhibition, malicious trespass, petit larceny, and in all misdemeanors where the offense is not punishable by im-

prisonment or by a fine greater than $100, and public nuisances, and over all criminal cases coming under any city or town ordinance where the fine did not exceed $100. §§ 4683, 4684, Bal. Code. Suppose a resident of Pierce county is temporarily in Thurston county, and while there commits a criminal offense within the concurrent jurisdiction of a justice of the peace, as prescribed in § 4683, *supra*. If the act of 1899 is intended to include criminal actions, then the accused must be tried before the justice of the peace of the precinct in which he resides in Pierce county. When arraigned he demands, as he may, a jury trial. The jurisdiction of the justice to summon a jury is coextensive only with the limits of the county where he holds his office. The accused is then tried by a jury from other than the county where the offense was committed. In case of conviction he appeals to the superior court. What superior court? Of the county where the justice resides and has his office, or of the county where the offense was committed? While the statute relative to appeals in civil actions says the appeal must be to the superior court of the same county where the judgment was rendered, in criminal actions the statute says the appeal shall be to the superior court. The universal practice has been to appeal in criminal cases to the superior court of the county where the judgment was rendered, as in civil actions, and we have no doubt that this is the meaning of the statute. When the accused is arraigned in the superior court he demands again a jury trial. The jurisdiction of the superior court to call a jury extends only to the limits of the county. The accused is then put upon his trial before a jury other than of the county in which the offense was alleged to have been committed, in clear violation of the constitutional provision. This result happens, or the accused cannot be tried and punished

for the offense. Suppose, as it might be, the jurisdiction of the superior court is first invoked. Then the accused, under § 6788, *supra,* must be prosecuted in the county where the offense was committed. Again, suppose a resident of Tacoma, Pierce county, and a resident of Olympia, Thurston county, jointly commit an offense in Olympia within the concurrent jurisdiction of a justice of the peace; then they may be tried before a justice of the peace, either in Olympia or Tacoma, because the act says the action may be brought in the justice court of the precinct in which one or more of the defendants reside; while, if the jurisdiction of the superior court should be first invoked, they could be tried only in Thurston county, where the offense was committed. But suppose the offense committed was one within the sole and exclusive jurisdiction of a justice of the peace, as provoking an assault by word, sign, or gesture; the only place in which the accused could be tried, if the respondent's contention is sound, is the precinct in Pierce county where the accused resided. This construction would in effect repeal, to a limited extent, § 4684, Bal. Code, defining the limits of the jurisdiction of the justice of the peace. It is a well known fact that in many precincts in this state there are no justices of the peace. A person residing in such a precinct, under the construction contended for by the respondent, could not be punished at all for an offense committed by him in another precinct, if within the sole and exclusive jurisdiction of a justice of the peace, such as provoking an assault. Such offenders, by the mere accident of residence, escape punishment, while others are punished if their residence happens to be in the precinct where the offense was committed and a justice of the peace has there an office. Section 12 of the bill of rights provides that no law shall be passed, granting to any citizen im-

munities which shall not equally belong to all citizens. It seems to us, the effect of the act in question is to grant just such prohibited immunities, if the construction contended for by respondent is correct. It is not to be presumed that the legislature intended such inharmonious results as to criminal trials as a strict construction of this law effects.

"Statutes should be so construed, if possible, as to give effect to all of their clauses and provisions; and each statute should receive such a construction as will make it harmonize with the pre-existing body of law. Antagonism between the act to be interpreted and the previous laws, whether statutory or unwritten, is to be avoided, unless it was clearly the intention of the legislature that such antagonism should arise. * * * Now it is always presumed * * * that the legislature does not intend to be inconsistent with itself, that it does not intend to make unnecessary changes in the existing laws, and that statutes are not to be repealed by implication. Hence arises the rule that, in case of any doubt or ambiguity, a statute is to be so construed as to be consistent with itself throughout its extent, and so as to harmonize with the other laws relating to the same or kindred matters. It was an ancient maxim of the law that 'interpretare et concordare leges legibus est optimus interpretandi modus;' that is, to interpret, and (to do it in such a way as) to harmonize laws with laws, is the best method of interpretation. It is not permissible, if it can be reasonably avoided, to put such a construction upon a law as will raise a conflict between different parts of it, but effect should be given to each and every clause and provision. But when there is no way of reconciling conflicting clauses of a statute, and nothing to indicate which the legislature regarded as of paramount importance, force should be given to those clauses which would make the statute in harmony with the other legislation on the same subject, and which would tend most completely to secure the rights of all persons affected by such legislation. And so, where an action is brought under a particular section of a statute,

which, considered alone, is in conflict with the constitution, and it appears that such statute, as a whole, is in harmony with the constitution, such construction should be given to the particular section as will harmonize with the statute, when considered in the light of the whole enactment. Again, where two statutes on the same subject, or on related subjects, are apparently in conflict with each other, they are to be reconciled by construction, so far as may be, on any fair hypothesis, and validity and effect given to both, if this can be done without destroying the evident intent and meaning of the later act. Thus, a statutory rule must be construed consistently with the whole system of pleading and practice of which it forms a part. When the power to hear and determine statutory misdemeanors is given to a municipal corporation, but no words of exclusion or restriction are used, the remedies between the state and the corporation will be construed to be concurrent; but where the manifest intention is that the prosecution shall be limited exclusively to one jurisdiction, that intention must prevail. Again, of two constructions, either of which is warranted by the words of an amendment to a public act, that is to be preferred which best harmonizes the amendment with the general tenor and spirit of the act amended. And it has been said that while laws must be construed so as to harmonize, if possible, yet, if two statutes interfere, that should be followed which is recommended by the most beneficial reasons." Black, Interpretation of Laws, pp. 60-62, and cases cited.

To hold that the act of 1899 applies only to civil actions will harmonize it with the legislation on the same subject, and will not tend in any way to destroy the uniformity of trials under our criminal system. This construction is the one recommended by the most beneficial reasons. It therefore follows that the judgment of the court below in granting the absolute writ of prohibition should be, and the same is, reversed and the writ quashed;

the appellant to recover his costs in the court below and on this appeal.

DUNBAR, C. J., and REAVIS, FULLERTON and ANDERS, JJ., concur.