

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2005

# USA v. El-Ghazali

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3117

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. El-Ghazali" (2005). *2005 Decisions.* Paper 826.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/826

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-3117
_____

UNITED STATES OF AMERICA

v.

JAMIL MOHD EL-GHAZALI
a/k/a JAMIL M. ELI GHAZALI
a/k/a JAMIL RAHMAN
a/k/a JAMIL ABD-EL-RAHMAN

Jamil Mohd El-Ghazali,
                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 01-cr-00349)
District Judge:  Louis H. Pollak

_____

Argued May 25, 2004

BEFORE:  ROTH and STAPLETON, Circuit Judges, and
SCHWARZER,[*] Senior District Judge

(Opinion Filed July 19, 2005)

_____

[*]The Honorable William W Schwarzer, Senior United States District Judge for the
Northern District of California, sitting by designation.

1

ANNA M. DURBIN (ARGUED)
50 Rittenhouse Place
Ardmore, PA 19003-2276

Counsel for Appellant

PATRICK L. MEEHAN
United States Attorney

EWALD ZITTLAU (ARGUED)
Assistant United States Attorney

LAURIE MAGID
Deputy United States Attorney
for Policy and Appeals

ROBERT A. ZAUZMER
Assistant United States Attorney
Senior Appellate Counsel

615 Chestnut Street
Philadelphia, PA 19106

Counsel for Appellee

_____

OPINION

_____

SCHWARZER, Senior District Judge.

Jamil Mohd El-Ghazali appeals his conviction for making a false statement

in a loan application to the Berks County Bank in violation of 18 U.S.C. §§ 1014 and 2.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction

pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We affirm the conviction, vacate the sentence, and remand for resentencing.

## FACTUAL AND PROCEDURAL HISTORY

Because we write only for the parties, we recite only those facts that are necessary for our disposition. The indictment alleged that El-Ghazali falsely answered "no" to two questions on a Berks County Bank loan application asking whether he was a defendant in any suits or legal actions and whether he had ever been declared bankrupt. The jury found El-Ghazali guilty of falsely answering the first question, but acquitted him on the second. The District Court denied El-Ghazali's motion for acquittal.

## DISCUSSION

### I.        SUFFICIENCY OF PROOF OF FDIC-INSURED STATUS

El-Ghazali first challenges the sufficiency of the evidence that at the time of the offense the Berks County Bank was an "institution the accounts of which are insured by the Federal Deposit Insurance Corporation" ("FDIC"). 18 U.S.C. § 1014. The government offered the testimony of a commercial loan officer employed by the bank at the time of the alleged offense who testified that the bank's accounts were insured by the FDIC throughout the period of his employment. He based his testimony on the fact that at "each of the teller windows there's a sticker saying that the deposits are federally insured up to $100,000." He added that he was "familiar with the way the [bank] conducted its business in the ordinary course of affairs."

3

"In reviewing the sufficiency of the evidence to sustain a conviction we review the evidence in the light most favorable to the government as verdict winner." *United States v. Applewhaite*, 195 F.3d 679, 684 (3d Cir. 1999). "We must affirm the conviction[] if a rational trier of fact could have found [the] defendant guilty beyond a reasonable doubt, and the verdict is supported by substantial evidence." *Id.* (quoting *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995)).

18 U.S.C. § 1014 prohibits "mak[ing] any false statement or report . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation." Thus, to obtain a conviction, the government was required to prove beyond a reasonable doubt that Berks County Bank was insured by the FDIC. "Proof of [FDIC-insured] status is not a mere formality; it is an essential element of the federal offense . . . . Indeed, federal jurisdiction depends on this status." *United States v. Platenburg*, 657 F.2d 797, 799 (5th Cir. 1981); *see also United States v. Schultz*, 17 F.3d 723, 725 (5th Cir. 1994) (same).

El-Ghazali contends that the evidence was insufficient because the government failed to offer documentary evidence of FDIC-insured status and the government witness lacked personal knowledge, offering only conjecture based on the stickers on the tellers' windows. We disagree. An FDIC-insured bank is required to "display at each place of business a sign . . . [stating] that deposits are federally insured to $100,000." 12 U.S.C. § 1828(a)(1)(B). Moreover, for the bank to have falsely held itself

out as federally insured would have been a criminal offense.  18 U.S.C. § 709 provides, in relevant part, that "whoever. . . uses the words . . . 'Federal Deposit Insurance Corporation' . . . or otherwise represents falsely by any device whatsoever that. . . its deposits . . . are insured . . . by the [FDIC] . . . shall be punished [by a fine or imprisonment]."  In light of the statutory scheme, the presence of the required FDIC decal on the tellers' windows, which could not be lawfully displayed unless the bank was FDIC-insured, represents substantial evidence of FDIC-insured status on which the jury could have relied in reaching its verdict.  *Cf. United States v. Thomas*, 610 F.2d 1166, 1171 (3d Cir. 1979) (stating that "the word 'National' in a bank's title is virtually conclusive evidence that the bank is federally chartered" because it would be illegal for a non-chartered bank to use that word).  Thus, this case is distinguishable from *Schultz*, on which El-Ghazali relies, where the court stated that an FDIC symbol on a depositor's check "no more proves . . that the bank . . . has FDIC insurance than a National Basketball Association logo on a jacket proves that the wearer is a professional basketball player."  17 F.3d at 726 n.7.  That case did not implicate the statutory scheme requiring a display of a sign at the bank's place of business.

## II.  SUFFICIENCY OF PROOF THAT EL-GHAZALI'S STATEMENT WAS KNOWINGLY FALSE

The question on the loan application asked, "Are you a defendant in any suits or legal actions?"  At the time when he answered "No," El-Ghazali knew that serious felony criminal charges were pending against him in the Philadelphia Court of Common

5

Pleas. He contends that because there is a history in the courts of disagreement among reasonable people about the meaning of "suits or legal actions," and the prosecution did not introduce evidence of what El-Ghazali understood the phrase to mean, there is insufficient proof as a matter of law that his answer was "knowingly false."

"Normally, it is for the petit jury to decide which construction the defendant placed on the question. However, . . . if a question is excessively vague or 'fundamentally ambiguous,' then the answer to such question may not, as a matter of law, form the basis of a . . . false statement prosecution." *United States v. Ryan*, 828 F.2d 1010, 1015 (3d Cri.1987) (citation omitted). A question is fundamentally ambiguous "when it [is] entirely unreasonable to expect that the defendant understood the question posed to him." *Id*. (quoting *United States v. Slawik,* 548 F.2d 75, 86 (3d Cir. 1977)).

The widespread use of the word "action" in both the civil and criminal context refutes El-Ghazali's argument that there is disagreement among reasonable people as to the meaning of "legal actions." WEBSTER'S THIRD INTERNATIONAL DICTIONARY (1971) defines "action" to include "a judicial proceeding . . . for . . . the punishment of a public offense." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1987) defines "action" as "a proceeding instituted by one party against another." BLACK'S LAW DICTIONARY (7th ed. 1999) defines "action" to include "[a] civil or criminal judicial proceeding," citing EDWIN E. BRYANT, THE LAW OF PLEADING UNDER THE CODES OF CIVIL PROCEDURE 3 (2d ed. 1899), which states that "lawyers usually speak of proceedings in

6

courts of law as 'actions.'" THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000) defines "action" as "[a]judicial proceeding whose purpose is to obtain relief at the hands of the court." THE OXFORD ENGLISH DICTIONARY (2d ed.1989) defines the term simply as "[a] legal process or suit." Dictionary definitions thus attribute a broad scope to "actions" which would include criminal as well as civil proceedings.

Court decisions and treatises are to the same effect. According to the Supreme Court, "[t]he word 'actions' may include both civil and criminal proceedings." *Caha v. United States*, 152 U.S. 211, 214 (1894). El-Ghazali cites *United States v. Cleveland*, 281 F. 249, 252 (S.D. Ala. 1922), a case that arose under the prohibition laws in which the judge observed that "the word 'action' is not ordinarily used to indicate a criminal prosecution." *Id*. at 253. The Seventh Circuit Court of Appeals rejected that court's interpretation in *Mason v. United States*, 1 F.2d 279 (7th Cir. 1924), however, stating that the word "action" as used in the statute should not be so narrowly construed. *Id*. at 280. The court cited BOUVIER'S LAW DICTIONARY (Rawle's 3d ed.), defining "criminal actions" as "[t]hose actions prosecuted in a court of justice, in the name of the government, against one or more individuals accused of a crime." *Id*. The court also referred to the various definitions of criminal actions found in WORDS AND PHRASES. *Id*. *See also State v. Schomber*, 63 P. 221, 222 (Wash. 1900) (stating that "civil and criminal actions are included within the definition of the term 'action'"). Finally, CORPUS JURIS SECUNDUM states that "[A] civil action differs from a criminal action primarily in that the

7

former is for the enforcement of a private right . . while the latter is for the punishment of a public wrong." 1A C.J.S. §68a (1985).

El Ghazali complains that the District Court excluded from evidence certain Pennsylvania statutory materials offered to support the argument that the loan application was ambiguous. In its post-trial ruling denying El-Ghazali's motion for acquittal, the Court found that it had erred and stated that, had a new trial motion been made, the Court would have granted it. We disagree. Because El-Ghazali does not claim to have read or be familiar with these materials, the question is whether their probative effect would have undermined the jury's finding that El-Ghazali properly understood the question. The materials consist principally of excerpts from Title 42, Judiciary and Judicial Procedure. *See* 42 Pa.C.S. § 101 *et seq*. Section 102 defines "action" for purposes of the Judicial Code as "any action at law or equity." It does not define "action" as being limited to civil proceedings. Indeed, Part VII is entitled "*Civil* Actions and Proceedings," implying that "actions" in other contexts may also encompass criminal proceedings. Thus, even if these materials might properly have been admitted, their exclusion was at most harmless error.

The application El-Ghazali signed was for a loan of $100,000, not a trivial transaction. At the time he was the Chief Executive Officer of Shendi Markets in Willingboro, New Jersey, with an alleged personal net worth of $2,642,100. Viewing the record in the light most favorable to the government and drawing all reasonable inferences in support of the verdict, it cannot be said to be "entirely unreasonable to expect that [El-

8

Ghazali] understood the question[ ] posed to him." *Slawik*, 548 F.2d at 86.

## III.     VALIDITY OF THE SENTENCE

El-Ghazali was sentenced under then-effective U.S.S.G. §2F1.1.  The base offense level under the guideline was six.  To that the District Court applied a seven-level enhancement under §2F1.1(b)(1)(H) on the basis of its finding El-Ghazali caused a loss of at least $120,000 but less than $200,000.  At the time of the sentencing, the District Court did not have the benefit of the Supreme Court decision in *United States v. Booker*,     US , 125 S.Ct. 738 (2005), holding that mandatory enhancement of a sentence under the Sentencing Guidelines, based on facts found by the court alone, violates the Sixth Amendment. 125 S.Ct. at 756.  Because El-Ghazali did not preserve the error below, plain error review applies.

We held in *United States v. Davis*, 407 F.3d 162 (3d Cir. 2005)(en banc), that a defendant's substantial rights may have been affected where the District Court erred by treating the Guidelines as mandatory rather than advisory.  *Id*. at 164. We further held that where mandatory sentencing was governed by an erroneous scheme, prejudice can be presumed and remand for resentencing is appropriate.. *Id*. at 165.

Accordingly we will vacate the sentence and remand for resentencing.

## CONCLUSION

For the reasons stated, we **AFFIRM**  El-Ghazali's conviction, vacate his sentence and remand for resentencing.

9