UNITED DEPARTMENT STORES COMPANY NO. 1 ET AL., APPELLANTS, *v.* CONTINENTAL CASUALTY COMPANY, APPELLEE.

(No. C-860067—Decided July 1, 1987.)

*Cohen, Todd, Kite & Stanford* and *Michael J. Boylan,* for appellants.

*Rendigs, Fry, Kiely & Dennis, Michael E. Maundrell, Donald C. Adams, Jr.* and *John W. Waters, Jr.,* for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County.

In February 1980, appellants purchased a policy of insurance, issued by appellee, from Herb Kuppin through Thomas E. Wood, Inc. ("Wood Agency") in Cincinnati. The policy covered the Orleans East Apartments located in New Orleans, Louisiana, which are owned by appellants. In April 1980, an endorsement to the policy was issued. The endorsement added the Louisiana standard fire policy as required by Louisiana state law for any insurance policy covering property located in Louisiana. Appellants deny that the policy endorsement was ever delivered to them. Appellants also purchased an insurance policy from Lumberman's Mutual which specifically covered certain machinery at the apartment complex including the air conditioning system.

The central air conditioning

system for the Orleans East Apartments was installed at the time the apartments were built (1964-1965). The system utilizes two chillers which circulate cold water for air conditioning to individual apartments. On June 11, 1980, a fire occurred which resulted in damage to the electrical wiring for the chillers. Although the chillers were inoperable while repairs were made to the wiring, they were returned to service in approximately two days.

On August 29, 1980, the apartment complex experienced a power failure. When the power was restored, the chillers could not be restarted. One of the chillers was restarted August 31, 1980. Apparently, the apartments were not adequately air-conditioned until two weeks later when a portable chiller was put into use. Appellants allege that during the period when the apartments were inadequately air-conditioned, several apartments were vacated and re-rentals became difficult.

Appellants notified their insurance agent, Herb Kuppin, of both the June 11 and August 29 occurrences, and submitted various forms documenting their claims for losses. In January 1981, appellee paid appellants $7,335.03 for the June 11, 1980 claim. In a letter dated October 1, 1981, appellee refused further payment of the claims. Resultantly, appellants filed a lawsuit in Louisiana based upon the contract of insurance. In that action, appellee asserted a one-year period of limitation which appellee claimed was contained in the endorsement to the insurance policy. Apparently, the Louisiana action is still pending.

Appellants filed the within action December 29, 1983, alleging bad faith and fraud on the part of appellee in adjusting appellants' claims. A jury trial commenced August 19, 1985. At the close of appellants' case, the court granted appellee's motion for a directed verdict. Appellants filed a motion for a new trial which the trial court denied. Appellants timely appealed. The above factual recitation is intended as an overview of the action *sub judice*; additional facts will be developed in our discussion of appellants' assignments of error.

Appellants' first assignment of error alleges:

"The trial court erred to the prejudice of the plaintiffs by dismissing the plaintiffs' claims and granting the defendant's motion for directed verdict at the conclusion of the plaintiffs' case."

Initially, appellants argue under their first assignment of error that the trial court erred in determining that the bad-faith claim was barred by the limitation period contained in the policy of insurance.

An insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer. *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, 6 OBR 337, 452 N.E. 2d 1315, paragraph one of the syllabus. The tort claim is independent of the contract of insurance and is not subject to the limitation period contained in the policy. *Plant* v. *Illinois Employers Ins. of Wausau* (1984), 20 Ohio App. 3d 236, 20 OBR 297, 485 N.E. 2d 773, paragraph three of the syllabus. Appellants' action, alleging that appellee insurer acted in bad faith in adjusting appellants' claims, is essentially a tort action and is governed by the four-year statute of limitations for torts. See *Wolfe* v. *Continental Cas. Co.* (C.A. 6, 1981), 647 F. 2d 705, certiorari denied (1981), 454 U.S. 1053. Therefore, the trial court erred in determining that appellants' claim of bad faith was barred by the limitation period contained in the insurance policy.

Appellants also argue under this assignment of error that the trial court erred in holding that appellee was entitled to a directed verdict under the "arcing exclusion" contained in the policy of insurance.

The policy of insurance provides in pertinent part:

"E. EXCLUSIONS

"This Coverage Part does not insure against loss caused by, resulting from, contributed to or aggravated by any of the following:

"1. Any electrical injury or disturbance to electrical appliances, devices, fixtures or wiring caused by electrical arcing * * *."

At the outset, we note it is clear that the damage which occurred as a result of the June 11, 1980 fire is not excluded from coverage under the "arcing exclusion."

The record reveals that George Lillich, general property manager of the Orleans East Apartments, testified that on August 29, 1980, an electrical storm caused a power outage at the apartment complex. When the power was restored, the chillers could not be restarted. Appellants presented the expert testimony of George A. Hero, an electrical engineer and mechanical contractor, and Joseph E. Leininger, a consulting mechanical engineer. Both Hero and Leininger testified that the August 29 damage to the air conditioning system was caused by lightning striking the power lines serving the apartment complex at some unknown location.

During his testimony, Hero was asked if there was any evidence that arcing could have occurred. Hero stated, "There is damage to the windings from heat and a short that could have been some arcing after the unit was re-energized." Hero further stated, "I believe that the damage occurred at the moment that the lights went out, which is when the lightning stroke would have hit the power lines causing the outage."

Appellee argues that Hero's testimony compels the conclusion that the August 29, 1980 damage is excluded from coverage under the "arcing exclusion." We disagree. Following a complete review of the record, it is clear that Hero's testimony was that the August 29 damage was caused by lightning. Hero did not affirmatively state that any electrical arcing occurred, he merely stated that some arcing may have taken place when the attempt was made to restart the chillers. In addition, Leininger testified that lightning was the cause of the damage which occurred on August 29.

Appellee argues that even if the August 29 damage was caused by lightning, it is excluded from coverage under the "arcing exclusion" because lightning is a form of electrical arcing. We have reviewed the policy of insurance and we find that the "arcing exclusion" does not contemplate lightning damage. We point out that during trial the trial court stated:

"The only reservation I would make is I would think that the electrical arcking [sic] would mean arcking [sic] by DC or AC current rather than by lightning."

Under the state of the record, we cannot say reasonable minds could only come to the conclusion that the August 29 damage is excluded from coverage under the "arcing exclusion." Therefore, the trial court erred in holding that appellee was entitled to a directed verdict under the "arcing exclusion" contained in the insurance policy.

Appellants also argue under their first assignment of error that the trial court erred in directing a verdict on the issues of bad faith, fraud and malice on the part of appellee in adjusting appellants' claims. The trial

court held that there was no evidence of bad faith.

The record reveals that George Stewart, a representative of the owners and a former owner of the Orleans East Apartments, testified that he sought help from insurance agent Herb Kuppin as to how to submit claims for the losses to appellee. Appellants sent written estimates of damage to Kuppin who forwarded the information to the Wood Agency and appellee's representatives in New Orleans. Pamela Gossett, an employee of the Wood Agency, testified that on November 14, 1980, the Wood Agency requested status reports from appellee regarding appellants' two claims. Appellee failed to respond to the request. Appellants then submitted a more detailed claim for losses. Stewart testified that, subsequently, appellants had to take out a loan to cover cash flow problems arising from the two losses.

The Wood Agency again sent status requests to appellee on December 18, 1980, but appellee failed to reply to the requests. On January 22, 1981, a check in the amount of $7,335.03, marked "partial payment," was sent to appellants for the June 11, 1980 occurrence. The Wood Agency once again requested status reports regarding appellants' claims on February 20, 1981. Appellee did not respond to the request. Stewart wrote to appellee on behalf of appellants on February 5, 1981, complaining of delays in the adjustment process. Appellee failed to reply to Stewart's letter. On March 10, 1981, the Wood Agency sent a fourth set of status requests, to which appellee did not respond. The Wood Agency wrote appellee a letter stating that it had received no acknowledgement of its prior status requests. At that time, the Wood Agency also sent appellee a second set of appellants' original claims.

In March 1981, appellants hired George Hero to inspect the chillers. He reported to appellee on June 23, 1981 that the damage to the chillers was caused by lightning. Joseph Leininger sent a report to appellee on June 30, 1981 which supported appellants' claims. Appellants' accountant sent appellee a detailed summary of appellants' claimed losses on June 17, 1981. Apparently, a representative of appellee at some point wrote the following on a report regarding appellants' claims: "Time period passed for filing suit?" On October 1, 1981, appellants received appellee's letter denying appellants' claims.

Construing the evidence most strongly in favor of appellants, we cannot say reasonable minds could only come to the conclusion that appellee had not acted in bad faith. However, we find that the evidence presented does not rise to the level of fraud and malice necessary for the imposition of punitive damages. See *Hoskins* v. *Aetna Life Ins. Co., supra.* Therefore, while the trial court erred in directing a verdict on the issue of bad faith, the court did not err in directing a verdict on the issues of fraud and malice.

Appellants also argue that the trial court erred in refusing to allow insurance agent Herb Kuppin to testify that appellee, in Kuppin's opinion, had acted in bad faith in adjusting appellants' claims. Following a review of the record, we cannot say the trial court abused its discretion in omitting Kuppin's testimony that appellee had acted in bad faith.

Appellants next argue that the trial court erred in refusing to admit plaintiffs' exhibits Nos. 1000 and 1001 into evidence. We find appellants' argument not to be well-taken, as appellants failed to proffer the exhibits at trial and, therefore, we have no basis upon which to review the alleged error.

Finally, under their first assign-

ment of error, appellants argue that the trial court erred in directing a verdict in favor of appellee with respect to certain "direct expenses" and "vacancy losses." We will first address the issue of "direct expenses." The record is somewhat confusing as the trial court did not define the term "direct expenses." Apparently, the trial court interpreted "direct expenses" as maintenance, wages, building repairs, painting and plumbing supplies. Essentially, appellants claim that these expenses were incurred in preparing the apartments which had been vacated as a result of the loss of air conditioning for re-rental. It is clear that the evidence presented by appellants as to the connection between the two occurrences and the claimed increase in "direct expenses" was so tenuous that any damages which may have been awarded on the "direct expenses" claim would necessarily be speculative. We find the trial court did not err in directing a verdict in favor of appellee on the issue of "direct expenses" because appellants failed to demonstrate a connection between the two occurrences and the claimed increase in "direct expenses."

Turning now to the issue of "vacancy losses" we find, construing the evidence most strongly in favor of appellants, that reasonable minds could have reached differing conclusions as to whether there existed any connection between the occurrences and the alleged "vacancy losses." Both George Stewart and George Lillich testified that at least some of the apartments were vacated due to the lack of air conditioning. We note that the record contains some evidence that certain vacancies may have occurred due to reasons other than a loss of air conditioning; however, we find that appellants presented evidence from which the trier of fact could have concluded that at least some of the vacancies occurred as a result of the loss of air conditioning. Therefore, the trial court erred in directing a verdict in favor of appellee on the issue of "vacancy losses."

In conclusion, we find the trial court erred in directing a verdict in favor of appellee on the issues of the limitation period, the "arcing exclusion," bad faith, and "vacancy losses"; therefore, appellants' first assignment of error is sustained as to those issues. We find the trial court did not err in directing a verdict in favor of appellee on the issues of fraud, malice, and "direct expenses"; therefore, appellants' first assignment of error is overruled as to those issues.

Appellants' second assignment of error alleges:

"The trial court erred to the prejudice of the plaintiffs by overruling the plaintiffs' motion for a new trial."

Under their second assignment of error, appellants essentially repeat the arguments made under their first assignment of error. For the reasons set forth above under the first assignment of error, appellants' second assignment of error is sustained as to the issues of the limitation period, the "arcing exclusion," bad faith, and "vacancy losses" and overruled as to the issues of fraud, malice, and "direct expenses."

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with law and with this decision.

*Judgment affirmed in part, reversed in part, and cause remanded.*

SHANNON, P.J., BLACK and HILDE-BRANDT, JJ., concur.