967 P.2d 639

James R. CHRISTIANSEN and Jane–Barrie Christiansen, Plaintiffs–Appellants,

v.

FIRST INSURANCE COMPANY OF HAWAII, LTD., Defendant–Appellee,

and

Does 1 through 15, Inclusive, Defendants.

No. 19968.

Intermediate Court of Appeals of Hawai'i.

March 18, 1998.

Certiorari Granted April 21, 1998.

As Amended April 22, 1998.

James R. Christiansen and Jane–Barrie Christiansen, plaintiffs-appellants pro se.

Jeffrey A. Griswold (Lyons, Brandt, Cook & Hiramatsu, of counsel) on the brief, Honolulu, for defendant-appellee.

Before WATANABE, ACOBA and KIRIMITSU, JJ.

KIRIMITSU, Judge.

This case presents two issues of first impression in this jurisdiction: (1) whether a claim alleging the tort of bad faith in the context of a first-party insurance claim is (a) an action independent of the insurance policy and, therefore, not subject to the policy's one-year limitation provision and (b) governed by the appraisal process provided for in the policy; and (2) whether a claim alleging a legal breach of contract and seeking compensatory damages for actual loss to damaged property is (a) governed by the policy's one-year limitation period and (b) governed by the appraisal process.

We agree with Plaintiffs–Appellants James R. Christiansen and Jane–Barrie Christiansen (the Christiansens) and hold that an action for the bad faith handling of a homeowner's insurance claim is independent of the insurance policy and, consequently, not governed by the one-year limitation period contained in the policy or by the appraisal process; but that a claim for a legal breach of contract, versus a tortious breach of contract, is subject to the policy's one-year limitation period and the policy's binding appraisal process.

The Christiansens appeal the Fifth Circuit Court's June 5, 1996 final judgment (final judgment) granting Defendant–Appellee First Insurance Company of Hawaii, Ltd.'s (First Insurance) May 20, 1994 Motion to Dismiss or in the Alternative for Summary Judgment (motion to dismiss). The Christiansens raise several points of error that we decline to address,[1] because our present holding is outcome-dispositive of the other issues.

For the reasons stated below, we reverse in part and vacate in part the circuit court's final judgment and November 10, 1994 Order Granting Defendant First Insurance Company of Hawaii, Ltd.'s Motion to Dismiss or in the Alternative for Summary Judgment and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual History

On or around September 9, 1991, the Christiansens purchased a homeowner's insurance policy with First Insurance for extended home insurance coverage, up to $220,000, for their rental home on Kaua'i.[2] There is no dispute over the policy's validity or that it covered the damage alleged in this case.[3]

On September 11, 1992 (the date of loss), the Christiansens' Kaua'i property suffered extensive damage from Hurricane I'niki.[4]

---

1. Plaintiffs–Appellants James R. Christiansen and Jane–Barrie Christiansen (the Christiansens) assert that the circuit court committed reversible error by granting Defendant–Appellee First Insurance Company of Hawaii, Ltd.'s (First Insurance) motion to dismiss, primarily because: (1) an action for bad faith in the first-party insurance context is not governed by the insurance policy and is not, therefore, subject to the insurance policy's appraisal clause or its one-year limitation provision; (2) in any event, in regards to both the actions for bad faith and legal contract damages, their action was started within one year after the Christiansens filed their insurance claim and was tolled by the filing of their claim; (3) First Insurance waived its right to assert the limitations defense as to either actions because of its dilatory tactics; (4) First Insurance's investigation of the claim tolled the insurance policy's limitation provision as to both actions; (5) the policy's limitation provision is part of an adhesion contract that should not be en-

forced; and (6) such limitation provisions are not favored by law and should not be enforced in this jurisdiction. We decline to address points of error (4) through (6) and address only points of error (1) through (3).

2. The Christiansens' permanent residence is in California.

3. The insurance coverage included damage from windstorms and falling objects, compensation for the fair rental value of the property, debris removal, loss to lawns, plants, shrubs, and trees, and reasonable repairs.

4. In their complaint, the Christiansens alleged:

The dwelling house herein described and the furniture and furnishings in it were damaged by hurricane winds as follows: the wind uprooted and broke trees causing them to fall on and destroy structures; the wind ripped shakes

Soon after the date of loss, the Christiansens allege that they filed a claim with First Insurance for approximately $79,000. At First Insurance's request, the Christiansens obtained contractors' bids on the cost of repairing the damage caused by Hurricane I'niki and, allegedly, submitted those bids to First Insurance or its agents five times between January to May 1993.

First Insurance allegedly failed to respond to the Christiansens' claim for several months. When First Insurance's adjuster did schedule a time to inspect the property, the adjuster was allegedly late and was "neither cooperative nor pleasant, and did not seem very interested in the damage that caused the leaking roof. Instead, he came with the mindset that he would find that the roof was not substantially damaged."

On June 15, 1993, First Insurance issued a reimbursement check for $12,583.31, with a letter stating, in pertinent part:

From our investigation your roof is repairable and does not have to be replaced. We disagree with your claim that the roof has to be replaced.

We believe that we owe as follows:

. . . .

. . . $12,583.31. This amount reflects your deductible and depreciation on the contents.

. . . .

The policy provides a method of resolving disagreements of the amount of loss. Under the **CONDITIONS** section of the policy, on page 7, it states:

"8. **Appraisal.** If you and we fail to agree on the amount loss [sic], either can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, *independent* appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state of the Described Location [ (Kaua'i, Hawai'i) ] to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of agreement to us, the amount agreed upon shall be the amount of loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us."

If you are not accepting this draft as our final payment then consider this letter as our written demand for appraisal, and we are naming Donald Richardson [ (Richardson) ] as our appraiser.

(Emphasis added.)

The Christiansens took proper action to dispute the amount of loss and, on July 6, 1993, selected John Mankin (Mankin) as their appraiser. Though both parties appointed appraisers, the appraisal process did not move forward in a timely manner. Mankin found First Insurance's appraiser, Richardson, unwilling to expeditiously appraise the Christiansens' property or act as an "independent" appraiser. An affidavit submitted by Mankin stated:

3. Several unsuccessful attempts were made to get the cooperation of Donald L. Richardson, the appraiser appointed by First Insurance Company of Hawaii, Ltd. However, it was not until after James R. Christiansen sent a letter to First Insurance Company of Hawaii [allegedly threatening to pursue legal action] . . . that Mr. Richardson agreed to meet and discuss the

from the roof, and damaged the roof shakes' water and rain resistant integrity, tore doors and gates from their hinges, damaged the ceiling and walls, as well as the furniture and furnishings of the house, which were damaged by the direct force of wind and rain entering through the openings in the roof and sides of the house caused by the wind and fallen trees and from rain water seeping into other parts of the house once it had entered, and depositing debris that required extensive cleaning.

damages [sic] to the property of [the Christiansens].

4. I met with Mr. Richardson in October 1993, at the real property in question, and we investigated each, every, and all of the items of damages [sic]. We agreed that the damages caused to James R. Christiansen would be as set forth as hereinafter set forth [sic]:

. . . .

| Total agreed upon insured losses, less the above deduction | $51,823.00 |
|---|---|

5. When I met with Mr. Richardson, as set forth above, he stated that he had to check with First Insurance Company before he could approve the damage to the concrete piers and for the loss of rent. On the loss of rent, he stated he needed to deduct the rental expenses. Mr. Richardson's need to check with First Insurance came as a surprise to me since I had the understanding that Mr. Richardson was an independent appraiser who should exercise his own judgment instead of taking directions from First Insurance Company.

6. Mr. Richardson said he would draw up the document of our agreement and send it to me for my signature. When it did not arrive, I made several telephone calls to Mr. Richardson, who did not return my calls.

7. Unexpectedly, I began to rapidly lose my vision at the beginning of November, 1993, and as a result ... was totally disabled until approximately February 1, 1994. When I recovered sufficiently, I telephoned Mr. Richardson regarding our agreed upon values. He stated that the First Insurance Company would not go along and agreed to FAX a copy of his

letter to me of November 17, 1993, which I had not seen before. . . . The contents of this letter and First Insurance's interference with the Appraisal process were not communicated to Mr. Christiansen until February, 1994.

8. During my telephone conversation with Mr. Richardson after I became aware of his letter of November 17, 1993, he was well aware of the provision in the insurance policy limiting the time for when an action should be filed, claiming it was then "too late."

The policy provision to which Mankin referred is a valid provision in the insurance policy that provides, "No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss."[5] First Insurance argues that this provision bars the Christiansens from bringing suit against it.

### B. *Procedural History*

On September 8, 1993, after the appraisal process had begun but before it was concluded, the Christiansens filed a complaint with the circuit court, alleging: (1) bad faith handling of their insurance claim, including allegations of negligence, fraud, unfair and deceptive trade practices, and tortious breach of contract; and (2) breach of contract, for which they claimed compensation, *inter alia*, in the amount of $67,332.69 for the actual loss suffered from the damage to their property. Though the complaint was filed, it was never served on First Insurance.[6] The Christiansens obtained an Order Extending Time for Service, and timely filed and served their amended complaint on March 7, 1994.

---

5. Hawai'i Revised Statutes (HRS) § 431:10–221(a)(3) (1993) impliedly authorizes an insurance policy to limit a right of action to one year by providing that:

**Prohibited policy provisions: limiting actions and jurisdictions.** (a) No insurance contract delivered or issued for delivery in this State and covering subjects located, resident or to be performed in this State, shall contain any condition, stipulation or agreement:

. . . .

(3) Limiting right of action against the insurer to a period of less than one year from the time when the cause of action accrues in connection with all insurances other than

property and marine and transportation insurances. *In contracts of property insurance, or of marine and transportation insurance, the limitation shall not be to a period of less than one year from the date of the loss.*

(Emphasis added.)

6. The Christiansens assert that they filed the original complaint in order to preserve their right to file a claim within one year of the date of loss, as specified by the policy, but did not serve the complaint because they hoped their dispute would be settled through the appraisal process.

First Insurance promptly filed its motion to dismiss, arguing that the Christiansens' original complaint was not the "start" of an action under the policy limitation provision because it was not properly served. First Insurance asserted that the amended complaint was filed approximately six months after the one-year limitation period had expired, and, therefore, both the bad faith and breach of contract actions were barred by the policy's limitation provision.

First Insurance further argued that: (1) bad faith claims are governed by the terms of the insurance policy, and, therefore, the Christiansens' claims of bad faith were governed by the policy's limitation provision; and (2) in any event, the ongoing appraisal process was a binding agreement to arbitrate, as to both the equitable and legal issues, that neither party could bring the court into, except under particular circumstances.

On November 10, 1994, the circuit court granted First Insurance's motion to dismiss.[7] The Christiansens filed their first notice of appeal on December 2, 1994; it was later dismissed for lack of a final judgment. A final judgment was entered on June 5, 1996.[8] The Christiansens submitted their timely notice of appeal on June 24, 1996.

In the meantime, in another proceeding, on January 10, 1995, the Christiansens filed a Motion to Compel Arbitration and for Court Appointment for a Neutral Umpire. On July 5, 1996, an umpire was selected. On October 8, 1996, the Christiansens were awarded an amount undisclosed in the record for the actual loss caused to their property by Hurricane I'niki.

## II. STANDARD OF REVIEW

The circuit court appears to have treated First Insurance's motion to dismiss not as an alternative motion for summary judgment but as a motion to dismiss made pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b). However, the Christiansens submitted several affidavits and exhibits to the court and argued, during the motions hearing, facts at issue in regards to their bad faith claim.

■ HRCP Rule 12(c) provides, in pertinent part, that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" The Christiansens' affidavits and exhibits were not excluded by the court. We therefore consider this to be an HRCP Rule 56 motion for summary judgment. *See State v. United States Steel Corp.*, 82 Hawai'i 32, 39, 919 P.2d 294, 301 (1996) (holding that where supporting materials for a motion to dismiss were not excluded by the trial court, a motion to dismiss may be treated as a motion for summary judgment).

■ As such, we review the circuit court's award of summary judgment in favor of the defendant *de novo*, using the same standard as applied by the circuit court. *Lee v. Corregedore*, 83 Hawai'i 154, 158, 925 P.2d 324, 328 (1996). Under this standard,

[s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and

---

7. The circuit court's order granting First Insurance's motion to dismiss stated, in pertinent part:
   IT IS HEREBY ORDERED THAT Defendant First Insurance Company of Hawaii Ltd.'s Motion to Dismiss or in the Alternative for Summary Judgment filed on May 20, 1994 is hereby granted and the Complaint and Amended Complaint are hereby dismissed with prejudice; provided, however, that nothing in this Order shall prevent either of the parties from bringing proceedings pursuant to Chapter 658, H.R.S., with regard to the insurance appraisal ongoing between the parties.

8. No final judgment was initially entered because, apparently, First Insurance failed to submit to the circuit court a proposed final judgment. It apparently continued to fail to do so until early June of 1996. Contrary to First Insurance's assertion that the Christiansens took "no action ... to prosecute the civil action" until their second notice of appeal was filed on June 24, 1996, the Christiansens timely filed their notice of appeal as soon as they were able, namely, after First Insurance's tardy proposed final judgment was entered by the circuit court.

that the moving party is entitled to a judgment as a matter of law.

*Id.* (citation omitted).

## III. *DISCUSSION*

The primary issue we address on appeal is whether the tort of bad faith, as alleged when an insurer fails to timely or properly dispose of an insurance claim, is an action independent of the policy and, therefore, not governed by the policy's limitation period. We also address the question of whether a bad faith action is subject to the strictures of Hawai'i Revised Statutes (HRS) § 658–5 (1993), regarding the binding effect of an appraisal process.

The secondary issue we address, in regards to the breach of contract claim, is (a) whether the filing of a claim tolls a homeowner's insurance policy's one-year limitation provision, and (b) whether an insured may bring a claim for damages to his or her property when the parties are in the midst of an appraisal process.

We hold that an action for bad faith is independent of the policy and, thus, not governed by the policy's one-year limitation period, and that an insured may bring a claim for bad faith against the insurer when in the midst of an appraisal process. Furthermore, the filing of an insurance claim prior to the running of the policy's limitation period tolls the time period, but an insured may not bring a claim for legal damages until the appraisal process has concluded.

### A. *Bad faith claims.*

#### 1. *The tort of bad faith in the first-party insurance context.*

■ The tort of bad faith in the first-party insurance context has recently been recognized by our jurisdiction as a valid cause of action. *See Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Hawai'i 120, 131–32, 920 P.2d 334, 345–46 (1996) (discussing the tort's evolution in our jurisdiction). The tort evolved from the well-recognized legal tenet that every contract contains an implied covenant of good faith and fair dealing that prohibits both parties to the contract from committing any acts that would deprive the other party of the benefits of the contract. *Id.* at 123–24, 920 P.2d at 337–38.

■ In order to bring a cause of action for the tort of bad faith, an insured "need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in payment of benefits will warrant recovery for compensatory damages[.]" *Id.* at 133, 920 P.2d at 347 (adopting the test in *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973)). However, "conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith.... Rather, the decision not to pay the claim must be in 'bad faith.'" *Id.* (citing *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 221 Cal. Rptr. 171, 175 Cal.App.3d 1 (1988)).[9] "The

9. An informative treatise on an insurer's duty of good faith and fair dealing explains that the tort of bad faith in the first-party insurance context has not been succinctly defined by state courts, but does include:

> [B]ad faith in the first party context can be established by evidence that the insurer unreasonably interpreted policy provisions. First party bad faith may also be shown by an insurer's unreasonably low settlement offer, or by the insurer's unreasonable conduct after the filing of the complaint in the bad faith action....
>
> The implied covenant of good faith and fair dealing requires that neither party to a contract impair the right of the other to receive the benefits of the agreement. Because one of the benefits an insured seeks by purchasing insurance is peace of mind, actions taken in bad faith by an insurer that deprive the insured

of that bargained-for benefit may constitute a breach of the implied covenant, even outside the context of the denial of benefits.

> The cases indicate that bad faith in the first party situation may consist of an unreasonable *delay* in payment as well as an outright denial of benefits. The insurer is not relieved from liability for bad faith merely because payment of the claim eventually is made, or because the insured's claim was never formally denied. Likewise, partial payment does not preclude recovery under a bad faith theory. Eventual payment of the claim will, however, serve to mitigate damages incurred as a result of the insurer's bad faith.
>
> ....
>
> The duty of good faith and fair dealing obliges an insurer to inform its insured of all possible benefits and coverage available under the policy and to disclose any conflicts be-

implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance." *Id.* at 132, 920 P.2d at 346 (internal quotation marks and citation omitted).

■ In the instant case, the Christiansens alleged in their amended complaint that, *inter alia,* First Insurance failed to act in good faith and with fair dealing by:

a. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

b. Negligently investigating Plaintiffs' claims;

c. Investigating Plaintiffs' claims with gross negligence;

d. Refusing to pay Plaintiffs' claims with a failure to conduct a reasonable investigation based upon all available information;

. . . .

f. Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiffs' claims in which liability has become reasonably clear;

g. Compelling Plaintiffs to institute litigation to recover amounts due under their insurance policy by offering substantially less than the amounts ultimately to be recovered in actions brought by the Plaintiffs;

h. Making claims payments to Plaintiffs not accompanied by a statement setting forth the coverage under which the payments are being made;

i. Failing to promptly settle Plaintiffs' claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage[.]

These allegations, on their face, meet the *Best Place* test for bringing an action in bad faith, as they are supported by affidavits and facts in the record that indicate that First

tween its interests and those of the insured. Furthermore, an insurer may be subject to a bad faith action even though it has paid the policy limits without delay when, for the purpose of protecting its own interests, it acts

Insurance may have delayed payment on the claim in order to toll the one-year limitation provision. Because First Insurance's motion was one to dismiss or in the alternative for summary judgment, we must consider the issue in the light most favorable to the Christiansens (the non-moving party). *Miller v. Manuel,* 9 Haw.App. 56, 65, 828 P.2d 286, 292 (1991), *cert. denied,* 72 Haw. 618, 841 P.2d 1075 (1992). We must, therefore, assume that the Christiansens' complaint alleged a valid cause of action for bad faith.

2. *Bad faith is independent of the policy.*

■ Having established that the Christiansens' complaint set forth a valid claim for bad faith handling of their insurance claim, we now discuss whether an action for bad faith is independent of the insurance policy.

In *Best Place,* an insured brought suit against a fire insurer for breach of contract and tortious breach of the implied covenant of good faith and fair dealing after the insurer denied him coverage. The insurer argued that, in the first-party insurance context, Hawai'i does not recognize the tort of bad faith. The primary issue presented before the supreme court on appeal was thus "whether Hawai'i recognizes the tort of bad faith refusal to pay a valid claim submitted by an insured under a policy of insurance." *Best Place,* 82 Hawai'i at 122, 920 P.2d at 336. The supreme court answered the question with an emphatic "yes." *See generally id.* at 127, 920 P.2d at 341.

In holding that our jurisdiction recognizes the tort of bad faith in the first-party insurance context, the court held that such a tort "is unconditional and *independent* of the performance of [the insured's] contractual obligations." *Id.* at 128, 920 P.2d at 342 (adopting the holding in *Gruenberg*) (emphasis added). The court stated that

the tort of bad faith is not a tortious breach of contract, but rather *a separate and distinct wrong* which results from the breach of a duty imposed as a consequence

improperly to impede the insured's recovery of the uninsured portion of the loss.
W. Shernoff, S. Gage & H. Levine, *Insurance Bad Faith Litigation* § 5.02[1] (1997) (footnotes omitted) (emphasis in original).

of the relationship established by contract. Therefore, the tort of bad faith allows an insured to recover even if the insurer performs the express covenant to pay claims. As such, an insurer could be liable for the tort of bad faith for certain conduct where it would not be liable for a tortious breach of contract.

*Id.* at 131, 920 P.2d at 345 (internal quotation marks and citation omitted) (emphasis added). A classic example of this type of "bad faith" recovery is when an insurance company unreasonably handles or denies payment of a claim. *See id.* at 128, 920 P.2d at 342 (quoting *Gruenberg*); *see also* W. Shernoff, S. Gage & H. Levine, *Insurance Bad Faith Litigation* § 5.02[1] (1997) (stating that "bad faith in the first party situation may consist of an unreasonable *delay* in payment as well as an outright denial of benefits").

The court supported its holding by reasoning that the tort of bad faith is independent of the insurance policy because of the "atypical" relationship existing between the insured and the insurer. *Best Place*, 82 Hawai'i at 132, 920 P.2d at 346. The court recognized that

> the adhesionary aspects of an insurance contract further justify the availability of a tort recovery.... [A] bad faith cause of action in tort will provide the necessary compensation to the insured for all damage suffered as a result of insurer misconduct. Without the threat of a tort action, insurance companies have little incentive to promptly pay proceeds rightfully due to their insureds, as they stand to lose very little by delaying payment.

*Id.*

We endorse the above reasoning, as the facts of this case illustrate how easily an insurance company can delay payment of insurance proceeds without, potentially, suffering any harm to itself. We are, of course, also bound by the court's ruling in *Best Place* and are compelled to reiterate the rule that the tort of bad faith is an action not "on the policy," but independent of it. As a Wisconsin court has held, and as we recognize herein, "[t]he breach of the fiduciary duty [imposed on insurers] is an intentional tort and is a common law recognition of the duty an insurer owes to its insured." *Warmka v. Hartland Cicero Mut. Ins. Co.*, 136 Wis.2d 31, 400 N.W.2d 923, 925 (1987).

### 3. *Contractual limitations defense.*

The logical result of the holding in *Best Place* is that a limitation provision provided for in an insurance policy does not apply to an action in bad faith. As such, we hold that because an action for bad faith is an independent tort, the proper limitation provision should not be that provided in the policy, but rather, that provided in the state statute of limitations, HRS § 657–7 (1993),[10] which limits causes of action for torts to two years. *See United Dept. Stores v. Continental Cas. Co.*, 41 Ohio App.3d 72, 534 N.E.2d 878, 880 (1987) (applying Ohio's statute of limitations for torts instead of the policy's limitation provision); *Lewis v. Farmers Ins. Co., Inc.*, 681 P.2d 67, 70 (Okla.1983) (Opala, J., dissenting) (similarly applying Oklahoma's state statute of limitations for torts); *Warmka*, 400 N.W.2d at 925 (similarly applying Wisconsin's state statute of limitations for torts).

### a. *Contrary case law distinguished.*

However, jurisdictions are split over whether an action for bad faith is "on the policy" or independent of it. First Insurance urges us to adopt the well-settled holding in California and other states that an action for bad faith on a first-party insurance claim is an action "on the policy" and, therefore, is governed by the limitation period provided for in the policy. *See Prieto v. State Farm Fire and Cas. Co.*, 275 Cal.Rptr. 362, 364–66, 225 Cal.App.3d 1188, 1192–96 (1991) (discussing the evolution of such a holding in California).

Several other jurisdictions similarly hold that an action for bad faith, under facts and policy language similar to ours, is governed

---

**10.** HRS § 657–7 (1993) provides:

**Damage to persons or property.** Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657–13 [ (regarding infancy, insanity and imprisonment) ].

by the one-year limitation provision contained in the insurance policy. *See Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 319 (9th Cir.1969) (applying Alaska law) (holding the same); *Zieba v. Middlesex Mut. Assur. Co.*, 549 F.Supp. 1318, 1323 (D.Conn.1982) (applying Connecticut law) (holding that "the alleged tortious conduct of the insurer arises out of its obligations under the provisions of the policy" and is therefore governed by the policy's limitation provision); *Home Fed. Sav. & Loan Assoc. v. Dooley's of Tucson, Inc.*, 149 Ariz. 105, 716 P.2d 1042, 1046 (Ariz. Ct.App. 1985) (holding that the plaintiff's claim of bad faith "can only be based on the policy and is thus barred by the statute of limitations" contained in the policy); *Modern Carpet Indus., Inc. v. Factory Ins. Assoc.*, 125 Ga.App. 150, 186 S.E.2d 586, 587 (1971) (stating that "if the source of the right claimed has evolved from the written contract of insurance, the limitations contained in it supersede any other general statutory limitations"); *Stahl v. Preston Mut. Ins. Assoc.*, 517 N.W.2d 201, 204 (Iowa 1994) (rejecting the assertion that the tort of bad faith is an independent action and holding that it is an action "on the policy").

The reasoning these courts consistently utilize is that "it is obvious the alleged tortious conduct of the insurer arises out of its obligations under the provisions of the policy," thus an action for the bad faith handling of an insurance claim is governed by the limitation provision in the policy. *Zieba*, 549 F.Supp. at 1323. This is, apparently, because "save for the insuring contract, there would be no legal relationship between the parties and hence [the insurer] could not be guilty of [acting in bad faith]." *Barrow Dev. Co.*, 418 F.2d at 319.

However, the basis for these holdings is in direct contradiction with our supreme court's holding in *Best Place*. We therefore reject this line of reasoning, as discussed below.

b. *Other case law adopted.*

The line of reasoning in jurisdictions like California is distinct from Hawai'i because it is premised on the concept that an action for bad faith is an action arising out of the contract/insurance policy. However, in *Best*

*Place*, our supreme court clarified that we consider an insurer's duty of good faith and fair dealing as one implied by law that is "independent of the performance of [the insured's] contractual obligations." 82 Hawai'i at 128, 920 P.2d at 342. Our supreme court adopted this reasoning because of the inherent fairness of allowing an insured to bring a bad faith tort action, considering the adhesionary nature of insurance contracts and the relative ease with which limitation provisions in those contracts can be circumvented or violated by insurance carriers. *See id.* at 132, 920 P.2d at 346.

Other jurisdictions that have also rejected the rule that bad faith actions are "on the policy" hold that, because bad faith tort actions are independent of the insurance policy, they are not governed by the policies' limitation provisions. *See Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir.1992) (applying Ohio law) (holding that a bad faith claim "exists irrespective of the contractual liability, and the limitation period in the contract does not apply"); *Emenyonu v. State Farm Fire and Cas. Co.*, 885 P.2d 320, 323–24 (Colo.Ct.App.1994) (holding that a limitations provision in a homeowner's insurance policy does not apply to allegations of bad faith delay or denial of a claim); *United Dept. Stores*, 534 N.E.2d at 880 (holding that in Ohio, "[t]he tort claim is independent of the contract of insurance and is not subject to the limitation period contained in the policy"); *Gray v. Holman*, 909 P.2d 776, 780 n. 8 (Okla.1995) (noting that a tort action against an insurer for refusal to settle a claim was governed by the state's statute of limitations for tort actions, not the insurance policy's); *Lewis*, 681 P.2d at 70 (holding the same); *March v. Paradise Mut. Ins. Co.*, 435 Pa.Super. 597, 646 A.2d 1254, 1256 (1994) (holding that a tort claim brought pursuant to state statute is not governed by the insurance policy's limitation provision), *cert. denied*, 540 Pa. 613, 656 A.2d 118 (1995); *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 798 (Utah 1991) (reasoning that "[b]y reading the 'no suit or action on this policy' language as not covering tort, we are simply following the usual rule by which we narrowly construe a standard form contractual limitation provi-

sion that is not bargained for and is drafted by the insurance company"), *aff'd,* 860 P.2d 937 (Utah 1993); *Warmka,* 400 N.W.2d at 925 (holding the same).

As a Colorado court stated,

the suit-limitation provision by its terms cannot apply to a tort action based on bad faith. . . . [The provision] requires proof that there has been compliance with the policy provisions. However, the basis for a first-party bad faith claim is the conduct of the insurer, not that of the insured. The language in the suit-limitation provision requiring compliance with policy conditions is more akin to that used in an action under the policy than to an action brought on a bad faith claim.

*Emenyonu,* 885 P.2d at 323–24 (internal quotation marks and citations omitted); *see also Flickinger v. Ninth Dist. Prod. Credit Assoc.,* 824 P.2d 19, 24–25 (Colo.Ct.App.1991) (similarly so holding). As previously stated, a tort of bad faith is a tort independent of the policy because its origins are not in the contract but in the common law imposition of good faith and fair dealing, the breach of which fiduciary duty may be considered an independent tort.

These courts' rulings are in accord with our supreme court, as they derive from the similar premise that a bad faith tort action based on an insured's unreasonable delay or denial of payment is not an action "on the policy," and thus cannot be governed by the policy's limitation provision.[11] Consequently, we adopt these sister jurisdictions' rulings and reject California's and other jurisdictions' converse holdings.

█ Accordingly, in the instant case, the Christiansens' tort claims are governed by the two-year statute of limitations imposed on tort claims, *see* HRS § 657–7, in which case the Christiansens' amended complaint, filed approximately eighteen months after their date of loss, was not filed too late.[12]

### 4. *Applicability of appraisal process to bad faith action.*

█ First Insurance also argues that because the appraisal process was ongoing at the time the Christiansens filed their amended complaint, the circuit court properly dismissed the bad faith action. First Insurance asserts that because an appraisal process is as binding as is arbitration, the ongoing appraisal process barred the Christiansens from filing an action for bad faith pursuant to the strictures of HRS chapter 658 (governing arbitrations and awards).

█ We agree that, in our jurisdiction, a clause in a contract providing for an appraisal process may, under certain circumstances, imply an agreement between the parties to arbitrate. *Ching v. Hawaiian Restaurants, Ltd.,* 50 Haw. 563, 565–66, 445 P.2d 370, 372 (1968); *see also Wailua Assoc. v. Aetna Cas. and Sur. Co.,* 904 F.Supp. 1142, 1148 (D.Haw.1995) (applying Hawai'i law and holding the same). Consequently, this appraisal process has "the binding effect of a judgment of a court of law" and is governed by the rules of arbitration. *Ching,* 50 Haw. at 566, 445 P.2d at 372. We further agree that, "[a]s a matter of public policy established by the legislature in HRS chapter 658[,] arbitration is to be encouraged as a method of resolving differences, thereby avoiding litigation." *Beclar Corp. v. Young,* 7 Haw.App. 183, 190, 750 P.2d 934, 939 (1988).

However, HRS § 658–5 provides:

**No trial if issue referable to arbitration.** If any action or proceeding is brought upon any issue referable to arbitration under an agreement in writing, the circuit court, *upon being satisfied that the issue involved in the action or proceeding is*

---

11. For a further discussion of this area of the law, *see* T. Ochoa & A. Wistrich, *Unraveling the Tangled Web: Choosing the Proper Statute of Limitation for Breach of the Implied Covenant of Good Faith and Fair Dealing,* 26 Sw. U.L.Rev. 1 (1996); Annotation, *Policy Provision Limiting Time Within Which Action May be Brought on the Policy as Applicable to Tort Action by Insured Against Insurer,* 66 A.L.R.4th 859 (1988).

12. We note that the date of loss is not the accrual date for a first-party bad faith action under HRS § 657–7 (1993). However, in this particular case, the earliest the accrual date could be is the date of loss, and therefore, the bad faith action was timely filed.

*referable to arbitration under such an agreement in writing,* shall stay the trial of the action or proceeding until the arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with the arbitration.

(Emphasis added.) In this case, the terms of the appraisal clause provide that "[i]f you and we fail to agree on the *amount [of] loss,* either can demand that the amount of the loss be set by appraisal." (Emphasis added.) This language clearly implies an agreement to arbitrate only the amount of loss—not an action for bad faith. Thus, pursuant to HRS § 658–5, the Christiansens' bad faith claim is not "any issue referable to arbitration under an agreement in writing."

In keeping with our above holding that an action for bad faith in the first-party insurance context is independent of the policy, we thus hold that, in this case, an ongoing appraisal process does not bar an insured from bringing a lawsuit alleging bad faith handling of his or her claim, because such an action is not "referable" to the policy.[13] Consequently, the circuit court erred in granting First Insurance's motion to dismiss on this issue.

Accordingly, the circuit court erred in granting First Insurance's motion to dismiss in regards to the bad faith actions because, besides there being a question of fact regarding First Insurance's alleged bad faith actions, First Insurance was not entitled to judgment as a matter of law on either the limitations defense or arbitration issue. We therefore reverse that part of the circuit court's final judgment dismissing the Christiansens' bad faith actions and remand those actions for further proceedings.

### B. The Christiansens' legal claims are "on the policy."

#### 1. Contractual limitations defense.

■ Second, we consider the Christiansens' claim for compensatory damages due to a breach of contract by First Insurance.[14] First Insurance asserts that the Christiansens were barred from filing an action for breach of contract because their action was filed six months after the policy's one-year limitation period had expired. We agree that the policy's limitation period applies to an action for a legal breach of contract, particularly when the damages prayed for are the disputed amounts recoverable under the insurance policy. This type of action is clearly an action "on the policy."

■ However, the Christiansens argue that even if the limitation provision applies, they filed their complaint within the requisite one-year period because the limitation provision was tolled upon the filing of their insurance claim. We agree.

#### a. Doctrine of equitable tolling.

We have recently held that, in the context of no-fault insurance, an insured may bring suit upon an unresolved claim after the applicable statute of limitations has expired, "provided the insured has made the claim for benefits before the running of the limitations period." *Wright v. State Farm Mut. Auto. Ins. Co.,* 86 Hawai'i 357, 362, 949 P.2d 197, 202 (App.1997). In *Wright,* an insured filed a claim with his insurer for no-fault benefits before the applicable two-year statute of limitations had run. Over a year later, the insurance company denied his claim. If the

---

13. This holding should not necessarily be construed to apply to other types of contracts; as the court in *Best Place, Inc. v. Penn Am. Ins. Co.* stated:

> [T]he policy considerations surrounding the adoption of the tort of bad faith in the insurance context are atypical and will not necessarily extend to all types of contracts. Thus, the availability of a tort recovery for breach of the implied covenant of good faith and fair dealing may be justified in actions brought on insurance contracts, but not necessarily in actions brought on other types of contract.

82 Hawai'i 120, 132, 920 P.2d 334, 346 (1996).

14. The Christiansens' amended complaint, though not specifically pled, appears to have claimed two different causes of action for breach of contract: one for tortious breach of contract, which falls under their action for bad faith; and one for a legal breach of contract, under which the Christiansens asked the circuit court to compensate them for the actual damage done to their property. This section discusses the Christiansens' action for legal breach of contract, not tortious breach of contract, because the tortious breach of contract issue is incorporated in the action for bad faith.

statute were not tolled, the insured's later demand for arbitration would have been barred by the two-year limitations period. However, rather than strictly apply the statute of limitations, we applied the doctrine of equitable tolling and held that "[i]n our view, ... the two-year period should be tolled by [the insured's] filing of a claim[,]" and only re-activated upon the insured's notice of the denial of his claim. *Id.*

We believe that *Wright's* application of the doctrine of equitable tolling extends to the instant case. Though *Wright* addressed a statute of limitations under Hawai'i's former no-fault scheme—not a limitation provision in a property insurance policy—other jurisdictions have held that, under limitation provisions similar to the one in this case, the provision was tolled by the timely filing of an insurance claim. *See Prudential–LMI Comm. Ins. v. Superior Court,* 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990) (holding as discussed below); *Kassab v. Michigan Basic Prop. Ins.,* 185 Mich.App. 206, 460 N.W.2d 300, 302–03 (1990) (cursorily applying the tolling doctrine to a property insurance policy); *Walker v. American Bankers Ins. Group,* 108 Nev. 533, 836 P.2d 59, 62–63 (1992) (applying the tolling doctrine to a property insurance policy).

The California supreme court's ruling in *Prudential–LMI, supra,* is particularly persuasive. In *Prudential–LMI,* an insured brought suit against a property insurer, claiming that the insurance company refused to pay his claim in bad faith. The insurer argued that the insured's claim was barred by the policy's one-year limitation provision. *Prudential–LMI,* 274 Cal.Rptr. at 391, 798 P.2d at 1234.[15] If the provision were literally applied, the claim would have been barred by the one-year provision.

After discussing at length the pros and cons of the doctrine of equitable tolling, the court held that the insured's filing of a claim tolled the policy's one-year limitation period and started to run again only after the insured received notice of the denial of his

claim. *Id.* at 398–99, 798 P.2d at 1241–42. We agree that this was an equitable result.

■ We also agree that the one-year limitation provision's central purpose is to provide an insured twelve months in which to commence suit. *See id.* at 396, 798 P.2d at 1239 (discussing *Peloso v. Hartford Fire Ins. Co.,* 56 N.J. 514, 267 A.2d 498, 501 (1970)). The purpose of the limitation is "not to achieve a technical forfeiture of the insured's rights by enforcing the limitation provision when the insured has given timely notice of a claim to his [or her] insurer," but to enable an insured to investigate his or her claim without suffering prejudice. *Id.* at 398, 798 P.2d at 1241 (citations omitted). If the limitation provision was strictly enforced, an insured would be forced to file a lawsuit, as the instant case illustrates, simply to secure his or her right to sue, even though a valid right of action might not then exist. Not only is this an unfair result, but also a wasteful one that renders the purpose of the limitation provision—to secure an insured's right to sue for at least twelve months—meaningless. Furthermore, application of the tolling doctrine also assures that the insurer's investigation will be thorough, while not penalizing the insured for intended or unintended delays in the investigation or appraisal process.

### b. *Application to facts.*

The limitation provision in the instant case provides that "[n]o action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the date of loss." The Christiansens' claim is therefore valid if the limitation provision was tolled, such that it did not run for more than 365 days.

In applying the doctrine of equitable tolling, the circuit court should first assess the date of loss, which in this case is undisputedly September 11, 1992; the limitation period begins to run from this date. It is then tolled on the date that the claimant files his or her claim for loss with his or her insurance carrier. In the instant case, the record

---

15. We note that in *Prudential–LMI Comm. Ins. v. Superior Court,* 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990), the California court applied the policy's one-year limitation period to a

bad faith claim because California follows a different line of reasoning than do we. *See supra* part III.A.2.b.

on appeal does not include that date; we thus remand this fact to be determined by the circuit court.

■ The limitation provision is re-activated upon the claimant's receipt of notice from the insurance company that it has denied his or her claim.[16] The running of the limitation period then terminates after the limitation period has run, in its entirety, for 365 days, or on the date that legal action is brought for compensation by the claimant, whichever is first.

■ In this case, the circuit court erred if it granted dismissal based upon the expiration of the limitation period without applying the doctrine of equitable tolling, which omission is implied by the record on appeal. Consequently, we vacate the circuit court's final judgment in regards to the Christiansens' claim for breach of contract and remand to the circuit court to determine (1) the date on which the Christiansens' claim for loss was filed, and (2) the resulting timeliness of the Christiansens' legal action.

### 2. Effect of ongoing appraisal process.

■ An issue still remains as to whether or not the ongoing appraisal process barred the Christiansens from filing a lawsuit as to their breach of contract claim, in particular, to their claim for the actual damage done to their property.

As previously discussed, a clause in an insurance policy providing for a formal appraisal process may, under certain circumstances, be tantamount to an agreement to arbitrate. HRS § 658-5 provides that if the issue is "referable" to the arbitration clause, the circuit court "*shall* stay the trial of the action or proceeding until the arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with the arbitration." (Emphasis added.)

■ In the instant case, the amount of loss claimed by the Christiansens is obviously "referable" to the appraisal clause. Also, the parties are "not in default in proceeding with the arbitration"; we take judicial notice of the fact that the appraisal process is over, the court having awarded the Christiansens a stipulated amount for the actual loss suffered to their property while this case was pending appeal. The Christiansens are bound by that award, and, more importantly, to the appraisal process. As our supreme court has held,

> one party to an arbitration agreement could not abandon the arbitration process once it had begun observing its terms, stating that, "[t]he effectiveness of arbitration as a vehicle for the resolution of disputes depends in part upon the predictability of its efficiency. * * * [P]redictability is not assured if the caprice of the parties controls the * * * process."

*Beclar Corp.*, 7 Haw.App. at 191, 750 P.2d at 939 (quoting *Leeward Bus Co., Ltd. v. City and County of Honolulu*, 58 Haw. 64, 71, 564 P.2d 445, 449 (1977)) (asterisks and brackets in original). Consequently, even at the time the court granted First Insurance's motion to dismiss, the circuit court properly held that the Christiansens' breach of contract claim should be resolved through the ongoing appraisal process, not litigation.[17]

---

**16.** First Insurance argues that the limitation period was never tolled because it never "denied" the Christiansens' claim, in that its June 15, 1993 letter awarded the Christiansens $12,583.31. However, the Christiansens' original claim for loss was approximately $79,000 and, according to John Mankin, he and First Insurance's appraiser initially agreed to appraise the loss at $51,823. In light of these and other facts indicating bad faith tactics, First Insurance's award appears suspiciously low. We believe that a questionably low award of benefits may, in some circumstances, be unreasonable and thus be a constructive denial of benefits. In the instant case, at least, a question of fact was raised regarding whether First Insurance reasonably "denied" the Christiansens the full amount of their claim, thus precluding the circuit court from granting First Insurance's motion to dismiss.

**17.** A party may bring an action in court regarding issues governed by an arbitration clause only if: (1) there is a "default in proceeding with the arbitration," meaning that one party fails to comply with the agreement to arbitrate, *Leong v. Kaiser Found. Hosp.*, 71 Haw. 240, 244, 788 P.2d 164, 167 (1990); *Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 108, 705 P.2d 28, 35 (1985); and/or (2) a party waives his or her right to enforce the arbitration agreement, such as when his or her actions are "completely inconsistent" with the terms of the

■ However, the court's decision to dismiss the claim, if based on the ongoing appraisal process, was improper. On its face, HRS § 658–5 mandates that the court not dismiss the action, but stay the proceedings pending the outcome of the arbitration. The circuit court, therefore, erred by dismissing the action, and should have entered an order to stay the proceedings.

The summary of our analysis as to the legal breach of contract claim is therefore that (1) the Christiansens' legal claims were not barred by the policy's limitation provision, and, therefore, the circuit court should not have granted First Insurance's motion to dismiss on this matter, but (2) the appraisal process did bar the Christiansens from continuing their legal claims; however, the court erred by dismissing the legal claims because, under HRS § 658–5, it should have stayed the proceedings. Accordingly, we reverse the circuit court's final judgment in regards to the limitations defense issue, vacate the judgment in regards to the arbitration issue, and remand for further proceedings consistent with this opinion.

## IV. *CONCLUSION*

In conclusion, we reverse the circuit court's final judgment and remand for further proceedings as follows: (1) we reverse the circuit court's final judgment in regards to the Christiansens' action for bad faith and remand those claims of bad faith for further proceedings; (2) we vacate the circuit court's dismissal of the Christiansens' legal breach of contract claims as to the limitations defense and remand for further proceedings; and (3) we vacate the circuit court's judgment in regards to the arbitration issue and remand for further proceedings consistent with this opinion.

---

contract. *Association of Owners of Kukui Plaza,* 68 Haw. at 110, 705 P.2d at 36. The Christiansens may have had a valid argument that, because of First Insurance's alleged dilatory tactics during the appraisal process, its actions were "completely inconsistent" with the appraisal process and, therefore, First Insurance waived its right to settle the disputed claim through arbitration. However, First Insurance subsequently complied with the terms of the appraisal clause, making the issue of waiver moot.