MAIERINE BARBOUR, Plaintiff-Appellee, *v.* CAROL SLAUGHTER, a/k/a
Carol Scott, Defendant.—(HERITAGE INSURANCE COMPANY,
Garnishee-Defendant-Appellant.)

First District (2nd Division) No. 61170

Opinion filed March 9, 1976.

Udoni & Johnson, of Chicago (Joseph B. Lederleitner, of Pretzel, Stouffer,
Nolan & Rooney, of counsel), appellant.

Paulson & Ketchum, of Chicago, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Maierine Barbour (hereinafter plaintiff) brought suit against Carol Ann Slaughter (hereinafter defendant) to recover monies for damages sustained in an automobile collision. Plaintiff discovered that defendant was an uninsured motorist and attempted to recover her claim pursuant to the uninsured motorist provision of her insurance policy with Heritage Insurance Company (hereinafter Heritage). No settlement was reached between plaintiff and her insurer, Heritage. Plaintiff reduced her claim against defendant to a judgment in the amount of $3,750 plus costs. Plaintiff then brought garnishment proceedings aaginst Heritage for this amount. Plaintiff prevailed in the garnishment action and Heritage appeals.

The issues raised on review are: (i) did Heritage waive its right to arbitration; and (ii) did plaintiff's failure to obtain Heritage's written consent to secure a judgment against defendant free Heritage of its liability on such judgment.

The facts revealed by the record on review are as follows: Plaintiff and defendant were involved in an automobile collision on November 18, 1968. On June 6, 1969, plaintiff filed suit, in the circuit court of Cook County, against defendant to recover for the injuries sustained in that collision. Defendant answered and counterclaimed against plaintiff. Plaintiff served notice of the counterclaim on her insurer, Heritage. In March of 1970 plaintiff notified Heritage's counsel of the discovery that defendant had no insurance coverage and suggested an attempt be made to continue the cause generally in order to negotiate pursuant to the uninsured motorist provisions of plaintiff's policy with Heritage. In July 1970 plaintiff advised Heritage by certified mail of her intent to proceed under the uninsured motorist provisions of her policy. Plaintiff's letter included a demand for arbitration naming her choice of an arbitrator and requesting that Heritage name its arbitrator. In August 1970 Heritage named its arbitrator.

On December 30, 1970, the State of Illinois Department of Public Works and Buildings, Division of Highways, Bureau of Traffic (hereinafter Department) informed Heritage by letter that defendant had submitted a report and apparently complied with all provisions of the Illinois statutes concerning financial responsibility.[1] Upon receiving this information, Heritage told its arbitrator not to proceed to arbitration

---

[1] In 1968 the Financial Responsibility Law was the controlling statute. (Ill. Rev. Stat. 1967, ch. 95½, par. 7—101 *et seq.*) In 1969 this law became chapter 7A of the Illinois Vehicle Code. (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—101 *et seq.*) Effective July 1, 1970, this law was replaced by the Illinois Safety Responsibility Law. (Ill. Rev. Stat. 1971, ch. 95½, par. 7—100 *et seq.*) The subject matter and section numbers of these chapters followed identical sequence and arrangement.

since there was a question as to defendant's status as an uninsured motorist. Heritage continued its correspondence with the Department and was notified on March 22, 1971, that it had been determined that defendant had *not* complied with the Illinois Safety Responsibility Law. However, Heritage continued its refusal to arbitrate.

On March 26, 1971, plaintiff attempted to arrange an arbitration date with Heritage's arbitrator, but that attempt was answered with a letter from the arbitrator indicating he had received information that defendant was not uninsured at the time of the collision. Plaintiff then secured letters from defendant's attorney and Home and Automobile Insurance Company (defendant's insurer from March 8, 1968, to September 8, 1968) indicating that defendant was an uninsured motorist on November 8, 1968, the date of the collision. On August 6, 1971, defendant's counsel, who swore defendant had told him she had no insurance on the date of the collision, was granted leave to withdraw as defendant's counsel.

On October 25, 1971, plaintiff requested that Heritage take over the common law case against the defendant since it was an uninsured motorist matter, and that Heritage review the matter to determine if it could be disposed of short of arbitration since they were having difficulty getting all of the arbitrators together. Heritage did not respond. On June 6, 1972, plaintiff obtained a default judgment against defendant in the sum of $3,750 plus costs.

On September 20, 1972, plaintiff notified Heritage by letter of this judgment and requested payment pursuant to the uninsured motorist provisions of Heritage's policy. Heritage responded requesting that plaintiff appear and make a sworn statement, and that plaintiff present proof of her damages as well as of defendant's status as an uninsured motorist. Plaintiff answered suggesting Heritage examine its file and the claim file covering the matter and inform plaintiff what, if anything, was lacking in the way of documentation. In response, by letter dated November 22, 1972, Heritage labeled the matter one for arbitration and substituted a new arbitrator for the one named in response to plaintiff's request for arbitration in July of 1970.

Unsuccessful in her efforts to resolve the issue, plaintiff filed garnishment proceedings against Heritage on November 30, 1973. Heritage defaulted and on January 4, 1974, a conditional judgment of $4,010.20 (plaintiff's default judgment of $3,750 plus costs) was entered in plaintiff's favor. On February 15, 1974, Heritage was given leave to file an appearance, answer, and motion to dismiss. Thereafter, the circuit court received briefs, heard oral arguments, and on August 27, 1974, entered an order confirming the conditional judgment entered against Heritage.

Heritage, relying on the uninsured motorist provisions of the insurance agreement between plaintiff and Heritage, contends the judgment against the defendant may not be recovered from Heritage. Heritage contends its liability must be settled by arbitration and that the judgment against the defendant is not binding on Heritage because Heritage never gave its written consent for the filing of the suit as required by the insurance agreement.

## I.

Illinois law provides that all insurance policies insuring against bodily injury or death resulting from the operation of a motor vehicle must cover the assured from injuries sustained at the hands of an uninsured motorist. Ill. Rev. Stat. 1967, ch. 73, par. 755a.

The policy between plaintiff and Heritage provided for uninsured motorist coverage and, in pertinent part, stated:

> "If any person making claim hereunder and the Company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount payable hereunder, then each party shall, upon written demand of either, select a competent and disinterested arbitrator."

Such arbitration clauses are valid under Illinois law. *Andeen v. Country Mutual Insurance Co.* (3rd Dist. 1966), 70 Ill. App. 2d 357, 364, 217 N.E.2d 814, *cert. denied*, 385 U.S. 1036, 17 L. Ed. 2d 682, 87 S. Ct. 775, *rehearing denied*, 386 U.S. 939, 17 L. Ed. 2d 812, 87 S. Ct. 953.

The arbitration clause in the case at bar is similar to one discussed in *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 92, 242 N.E.2d 149:

> " 'If any person making claim hereunder and the Company do not agree that such person is legally entitled to recover damages from the owner or operator of an Uninsured Vehicle * * *, or do not agree as to the amount of payment * * * upon written demand of such person or upon written demand of the Company, the matter or matters upon which such person and the Company do not agree shall be settled by arbitration * * *.' "

*Flood* ruled that such a clause is limited to the issues of liability of the uninsured motorist to the insured and the amount thereof. (41 Ill. 2d 91, 94.) Following *Flood*, in our opinion, the only issues on which Heritage may demand arbitration are the liability of defendant to plaintiff and the amount thereof; defendant's status as uninsured is not open to arbitration.

Assuming Heritage has raised arbitrable issues, we must consider

whether under the facts of this case Heritage has waived its right to arbitrate. As discussed in "Uninsured Motorist Indorsement: Validity and Enforceability of Provision for Binding Arbitration, and Waiver Thereof," 24 A.L.R. 3d 1325, 1338-39 (1969), where an arbitration provision is optional, an insurer may waive its right to arbitrate by not making a demand for arbitration within a reasonable time, or until after judgment has been obtained against the uninsured motorist. See also *Andeen.*

In the case at bar Heritage avoided all attempts to arbitrate until after the plaintiff secured a judgment against defendant. Plaintiff informed Heritage of its desire to arbitrate as early as July 1970. Heritage agreed to arbitrate and named its arbitrator in August of 1970. However, in December of 1970 Heritage received a letter from the Department informing Heritage that defendant had complied with the Financial Responsibility Act.[2] Upon receiving this information, Heritage then told its arbitrator not to enter arbitration proceedings with plaintiff. Heritage persisted in its refusal to arbitrate long after learning that the Department had made a mistake. On March 22, 1971, the Department informed Heritage that the defendant was not in compliance with the Illinois Safety Responsibility Law. Yet Heritage continued to frustrate plaintiff's attempts to arbitrate until plaintiff finally was compelled to secure a judgment against defendant.

After plaintiff had presented Heritage with the judgment against defendant, Heritage, in November 1972, then first made a request for arbitration. Heritage argues *Andeen* does not control because the insurance company in *Andeen* never invoked its right to arbitrate. We disagree and hold *Andeen* is controlling. The insurance company in *Andeen*, like Heritage in the case at bar, made no demand for arbitration until after plaintiff had secured a judgment against the uninsured motorist. While the insurance company in *Andeen* did not pursue its right to arbitration, it did contend on appeal that the case should have been submitted to arbitration as specified in the policy. (70 Ill. App. 2d 357, 362, 365.) *Andeen* affirmed the validity of arbitration agreements, but required that a party to the insurance contract request arbitration within a reasonable time.

■■ It is to be noted that Heritage's request for arbitration was first made four years after the injuries were inflicted, at least three years after receiving notification of the incident, and five months after plaintiff had secured a judgment against the uninsured motorist liable for those

---

[2] It is to be noted that the letters in the record did not refer to a specific section of the Financial Responsibility Act.

injuries. In our opinion Heritage's request for arbitration in November 1972 was belated and unreasonable. That request came over a year and a half after Heritage learned defendant was uninsured. Furthermore, during that period of time, the record clearly suggests that Heritage continuously frustrated plaintiff's attempts to arbitrate. Even assuming the issue was subject to arbitration, Heritage, by its delaying conduct, waived its right to arbitration.

## II.

Heritage's second contention is that plaintiff never secured the written consent of Heritage to bring suit against defendant as required by the insurance agreement. The clause referred to reads:

> "No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the Company, of the issues of liability of such person or organization or the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the Company."

Heritage claims the above clause makes the case at bar differ from *Andeen.* (See 70 Ill. App. 2d 357, 364.) *Andeen's* policy provided it would not apply if the insured prosecuted the claim against the uninsured motorist to judgment without the consent of the insurer. The policy in the case at bar specifies that no judgment, obtained without the consent of the insurance company, will be conclusive between the plaintiff and Heritage. While the effect of failing to secure a written consent differs in these cases, the written consent is used in both cases to prevent recovery by the insured against his own insurance company when he has not obtained that insurance company's written consent to proceed against the uninsured motorist.

The same considerations made in *Andeen* to invalidate the exclusion clause may be made in the case at bar. An insurance company arbitrarily withholding its consent waives its right to invoke the exclusionary clause of its policy. (See *Andeen*, 70 Ill. App. 2d 357, 362-63; *Levy v. American Automobile Insurance Co.* (1st Dist. 1961), 31 Ill. App. 2d 157, 164, 175 N.E.2d 607; *cf. Tuthill v. State Farm Insurance Co.* (5th Dist. 1974), 19 Ill. App. 3d 491, 497, 311 N.E.2d 770; 25 A.L.R. 3d 1275, 1289.) In the case at bar, plaintiff attempted to negotiate with Heritage; she made a demand for arbitration; and she requested that Heritage take over the prosecution of the suit, since it was an uninsured motorist matter. Heritage failed to cooperate with any of these efforts. Under these circumstances and faced with the running of the statute of limitations,

plaintiff proceeded to reduce her claim against the uninsured motorist to judgment.

In the case at bar, Heritage knew of the suit against defendant. It was given notice of a counterclaim by defendant against plaintiff, and its attorneys filed an appearance. After plaintiff learned of defendant's uninsured status and after Heritage's refusal to arbitrate, plaintiff invited Heritage to take over plaintiff's common law tort suit against defendant. Heritage refused to do so, thus requiring plaintiff to do so. While it is true plaintiff did not obtain the written consent of Heritage to prosecute the suit, plaintiff alleged in oral argument before this court that Heritage's counsel had verbally consented to the action.

■■ Heritage would neither arbitrate nor take over the common law action. Plaintiff's only choice in protecting her right of recovery was to secure a judgment against the defendant without Heritage's written consent. In our opinion, the withholding of consent by Heritage was arbitrary; we find nothing in the record by Heritage indicating a reason for its failure to cooperate. The requirement of written consent, like the arbitration provision of the insurance agreement between the parties, was waived by the conduct of Heritage.

Heritage has not attacked the propriety of the judgment against the defendant. Heritage merely argues plaintiff should not be entitled to collect under the provisions of the uninsured motorist section of her insurance policy, because she has failed to follow the procedures set forth in that section of the agreement. We hold that by its arbitrary withholding of consent and attempts to frustrate arbitration, Heritage waived those procedural requirements and the circuit court properly entered judgment against Heritage.

The order of the circuit court of Cook County is affirmed.

Judgment affirmed.

STAMOS, P. J., and HAYES, J., concur.