**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED APRIL 23, 2008

MARY ELLEN McDONALD,

Plaintiff-Appellee,

v

No. 132218

FARM BUREAU INSURANCE CO,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

TAYLOR, C. J.

In this case, we must decide whether a contractual limitations period in an insurance policy is tolled from the time a claim is made until the insurance company denies the claim and, if it is not, whether the limitations period may be avoided under the doctrines of waiver or estoppel. Consistently with long-established contract law, we hold that there is no automatic tolling when a claim is filed unless the contract so provides. Traditional contract doctrines such as waiver and estoppel can apply when the facts support them. However, in the present case plaintiff has not shown that she relied on any misconduct by defendant; therefore, defendant cannot be estopped from applying the limitations period to plaintiff's

claim. Because the Court of Appeals held to the contrary, we reverse the Court of Appeals and remand for entry of summary disposition in favor of defendant.

## I. FACTS AND PROCEEDINGS

The policy at issue in this case is one for underinsured motorist (UIM) coverage. These policies are not mandated by statute; individuals contract for such coverage voluntarily. When an insured is injured by a tortfeasor motorist whose own policy is insufficient to cover all of the insured's damages, the insured can seek coverage from his or her UIM policy for damages that exceed the tortfeasor's policy limits. Thus, the insured generally must first determine how much of his or her damages will be covered by the tortfeasor and enter into a settlement with the tortfeasor, and then seek further payment from his or her UIM provider for the balance.

In this case, plaintiff was injured in an automobile accident on November 29, 2001. The policy under which she was covered included UIM coverage. However, it contained an endorsement that provided: "No claimant may bring a legal action against the company more than one year after the date of the accident." The policy also had a clause prohibiting the insured from settling without defendant's written consent and stating that defendant "shall be obligated" to respond within 30 days to the insured's request to settle.

On May 10, 2002, plaintiff's attorney notified defendant by mail that plaintiff had an underinsured motorist claim, acknowledging that the policy had a limitations period that would expire on November 29, 2002. Defendant responded

2

that it needed answers to interrogatories (concerning collectibility of the underinsured motorist) before it could give permission to settle and that defendant's claims representative needed to review the medical records. The claims representative's letter indicated that after the medical records were reviewed, "I will be getting back in touch with you."

On August 2, 2002, plaintiff's attorney sent another letter, asking for a decision regarding consent to settle "so that I can determine if I need to sue Farm Bureau or not." On August 16, he sent a third letter stating that he intended to "commence the process of negotiating the UIM claim" as soon as he received written permission to settle. The claims representative sent written permission to settle for $20,000.[1] The record indicates no further action by either party before November 29, 2002, when the period of limitations expired. On December 10, 2002, defendant sent plaintiff a letter indicating that the one-year limitations period had expired and that defendant would no longer consider the UIM claim.

Plaintiff filed this action five months later. Defendant moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and 2.116(C)(10) (no material question of fact). The trial court denied defendant's motion and granted

---

[1] In her brief and in her opposition to defendant's trial court motion for summary disposition, plaintiff argued that the written permission, dated August 14, 2002, was later revoked in a telephone conversation on August 16, 2002. However, plaintiff's counsel in oral argument before this Court conceded that the August 14 date on the letter was incorrect. The record indicates that the date was a clerical error; the letter should have been dated August 24, 2002. Thus, there is no dispute that written permission to settle was given and not revoked.

3

summary disposition to plaintiff, holding that (1) the one-year period was unreasonable and thus unenforceable as a matter of law, (2) defendant was estopped from asserting the limitation because of its dilatory conduct, (3) pursuant to *Tom Thomas Org, Inc v Reliance Ins Co*, 396 Mich 588; 242 NW2d 396 (1976), the limitations period was tolled by plaintiff's May 10, 2002, letter until defendant denied the claim, and (4) the limitations period was too ambiguous to enforce.

On appeal in the Court of Appeals, the application for leave was first held in abeyance for this Court's decision in *Rory v Continental Ins Co*, 473 Mich 457; 703 NW2d 23 (2005). After the *Rory* decision, the Court of Appeals affirmed, holding that the trial court had correctly ruled that the contractual limitations period was tolled by plaintiff's May 10, 2002, letter to defendant until the denial of plaintiff's claim on December 10, 2002. *McDonald v Farm Bureau Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued August 24, 2006 (Docket No. 259168). In so holding, the panel relied on the decision in *West v Farm Bureau Gen Ins Co of Michigan (On Remand)*, 272 Mich App 58, 65-67; 723 NW2d 589 (2006), which held that multiple recent decisions of this Court limiting the doctrine of judicial tolling were inapplicable to insurance contract claims and that *Rory* should be applied prospectively only. *McDonald, supra* at 2. Because this single issue was dispositive, the panel did not address the issues of reasonableness, contractual ambiguity, or estoppel. *Id.*

This Court granted defendant's application for leave to appeal, directing the parties to include among the issues to be briefed (1) whether a contractual

4

limitations period may be avoided on the basis of the doctrines of waiver or estoppel and (2) whether the one-year limitations period contained in the insurance policy is tolled from the time a claim is made until the insurance company denies the claim. 477 Mich 996 (2007).

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision to grant or deny summary disposition. *Rory*, *supra* at 464. Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo. *Id*. When reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005).

## III. JUDICIAL TOLLING

This Court has addressed the issue of tolling the limitations periods of insurance policies several times in the recent past. In *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 564; 702 NW2d 539 (2005), this Court held that the "one-year-back" limitation provided for in MCL 500.3145(1) for recovering no-fault personal protection insurance benefits could not be automatically tolled because that was contrary to the express language of the statute. In so holding, we overruled *Lewis v Detroit Automobile Inter-Ins Exch*, 426 Mich 93; 393 NW2d 167 (1986), which had applied to the statutory limitations period the "judicial

5

tolling" doctrine that *Tom Thomas* had used in the context of optional insurance contracts. *Devillers*, *supra* at 464. We noted in *Devillers* that *Tom Thomas* departed from the well-established legal principle that courts cannot rewrite the parties' contracts if the terms are expressly stated. *Id.* at 567. The *Tom Thomas* Court declined to apply traditional contract doctrines such as waiver and estoppel because it concluded that "[w]aiver and estoppel analysis results in considerable uncertainty concerning the 'resaonableness' of the time remaining for suit." *Tom Thomas, supra* at 597 n 10 (citation omitted). Without explaining why this would create a problem, the Court simply disregarded the one-year contractual provision because some of that time would undoubtedly be taken up in processing the claim. Instead, it declared that the "appropriate resolution" was "to toll the running of the limitation from the time the insured gives notice until the insurer formally denies liability." *Id*. at 596-597. Because the action had been filed less than 12 months after the insurer denied liability, the Court held that it was timely, even though more than one year had passed since notice of the claim was given. *Id*. The dissent noted that the insured "was guilty of sleeping on its bargained-for rights" for more than six months of the elapsed time and that, under standard contract law, a one-year period was a one-year period. *Id*. at 601 (Lindemer, J. dissenting).

*Devillers* set forth this reasoning and explained how the *Tom Thomas* tolling doctrine was expanded from contractual limitations periods to the statutory limitations period provided by MCL 500.3145(1) in the context of automobile no-fault statutes. Reversing caselaw that had adopted the doctrine, the Court noted

6

that it was "unable to perceive any sound policy basis for the adoption of a tolling mechanism with respect to the one-year-back rule." *Devillers, supra* at 583. The Court expressly agreed with the dissents in the cases reversed and in *Tom Thomas*, stating: "Statutory—or contractual—language must be enforced according to its plain meaning, and cannot be revised or amended to harmonize with the prevailing policy whims of members of this Court." *Id.* at 582. The Court concluded by holding that the statutory limitations period should be enforced as written by the Legislature.

Similarly, in *Rory, supra* at 468, this Court emphasized that "unambiguous contracts are not open to judicial construction and must be enforced as written." Judicial conclusions regarding the "reasonableness" of unambiguous contractual provisions cannot be used to evade enforcement of the contract as written. *Rory* expressly overruled *Tom Thomas* and its progeny. *Id*. at 470. *Rory* also concluded that the one-year limitation was not contrary to public policy, noting that "the Legislature has assigned the responsibility of evaluating the 'reasonableness' of an insurance contract to . . . the Commissioner of Insurance" and that because the commissioner had approved the policy at issue in that case, which included a one-year limitation, the courts were not free to determine de novo whether the policy was reasonable. *Id.* at 475-476.

In the present case, the Court of Appeals affirmed the trial court's grant of summary disposition in favor of plaintiff solely on the basis of its conclusion that the limitations period was tolled pursuant to *Tom Thomas*. In so doing, the Court

7

cited, but then expressly ignored, language in *Devillers*, *supra* at 582. Instead, the Court preferred to follow its own precedent, *West*, which stated that *Devillers* concerned "statutory claims brought pursuant to the no-fault act" and so was "not instructive" in a case that did not involve that act, even while the *West* panel acknowledged that *Devillers* had held that *Tom Thomas* was wrongly decided. *McDonald, supra* at 2; *West*, *supra* at 64-65. The Court of Appeals also followed *West*'s determination that *Rory* applies prospectively only and ignored the substance of *Rory*'s analysis that concluded that *Tom Thomas* was incorrectly decided. *McDonald, supra* at 2.

The Court of Appeals correctly noted that our caselaw has already declared that *Tom Thomas* was wrongly decided. Just as courts are not to rewrite the express language of statutes, it has long been the law in this state that courts are not to rewrite the express terms of contracts. See, e.g., *Mann v Pere Marquette R Co*, 135 Mich 210, 219; 97 NW 721 (1903), citing *Baltimore & O S R Co v Voigt*, 176 US 498, 504; 20 S Ct 385; 44 L Ed 560 (1900) ("[T]he usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy . . . ."). Rather than blindly following *West*'s questionable disregard for *Devillers*'s clear statement, the Court of Appeals should have, at least, sought conflict-panel resolution of the question. MCR 7.215(J).

As was made clear in *Devillers*, *supra* at 567, and *Rory*, *supra* at 470, *Tom Thomas* disregarded long-established caselaw requiring that we read unambiguous

contract provisions as they are written. By allowing automatic tolling, it made a nullity of express contract language, and parties were unable to rely on unambiguous contract provisions. The reasoning we applied in *Devillers,* precluding automatic tolling of statutory limitations periods, applies equally to similar contractual limitations periods.

Moreover, we are not as convinced as Justice Kelly that judicial tolling of these claims "promotes the quick resolution of insurance claims outside the courts." *Post* at 5. Tolling removes from both sides the incentive to speedily resolve the claim: until a decision is made to deny a claim, the plaintiff may have little basis for a claim. Certainly, tolling muddies what rights and responsibilities exist under the contract, given that the express terms of the contract no longer control in that situation. We believe the better position is for parties to determine their own contractual provisions and then bear the responsibility of enforcing them as written.

We reiterate that *Rory* overruled *Tom Thomas* and its progeny and conclude that express limitations periods in optional insurance contracts are not automatically tolled as a matter of law by filing a claim. Under the plain language of the contract, plaintiff was required to bring an action against defendant by November 29, 2002, unless she can point to a legally supported reason why that deadline was not effective.

Plaintiff argues that, since our decision in *Rory*, public policy has changed to preclude limitations provisions shorter than three years and, therefore, that this

9

provision should not be enforced because it is against public policy. Specifically, plaintiff points to a "Notice and Order of Prohibition" issued by the Office of Financial and Insurance Services (OFIS)[2] on December 16, 2005, prohibiting uninsured motorist benefits policies with limitations periods of less than three years. However, the "Notice and Order" also expressly states that it does not prohibit insurers from continuing to use policies that were legally in use before December 16, 2005.[3] Moreover, the general rule is that contracts are interpreted in accordance with the law in effect at the time of their formation. See, e.g., *Byjelich v John Hancock Mut Life Ins Co*, 324 Mich 54, 61; 36 NW2d 212 (1949). Thus, the one-year limitation was valid at the time the parties entered into the contract. Accordingly, we hold that the trial court erred in granting summary disposition to plaintiff on this basis.

In her dissent, Justice Kelly asserts that the OFIS order should persuade us to invalidate unambiguous contracts like the one at issue here on the ground that they are against good public policy. However, we are of the view that our role is fundamentally different from that of OFIS. OFIS determines whether an insurance contract is valid. If it is, it is then the responsibility of this Court to enforce the valid contract as written. The OFIS order expressly left in force contracts already

---

[2] OFIS is now the Office of Financial and Insurance Regulation, effective April 6, 2008. Executive Order No. 2008-2.

[3] OFIS issued a similar order specifically addressing underinsured motorist benefits on April 4, 2006.

in effect. While the Court is, of course, free to adopt a policy that would apply a blanket invalidation to countless existing insurance contracts, the majority of this Court is of the view that we follow the law established by the lawgiver. That is, when a statute is at issue, the law is established by the Legislature, and we are compelled to follow it as written. Similarly, when a contract is at issue, the law we must follow is the unambiguous terms established by the parties to the contract. Justice Kelly consistently has preferred a more aggressive and invasive role for the Court, particularly when construing contracts and statutes. The rule that she wishes is for the Court to serve as an ombudsman, rewriting contracts and statutes in the name of "public policy" whenever it appears that the plain terms of the text work some perceived inequity. See, e.g., *Herweyer v Clark Hwy Services, Inc,* 455 Mich 14; 564 NW2d 857 (1997), overruled by *Rory, supra* at 488-489; *Husted v Auto-Owners Ins Co*, 459 Mich 500, 517; 591 NW2d 642 (1999) (Kelly, J., dissenting); *Van v Zahorik*, 460 Mich 320, 342; 597 NW2d 15 (1999) (Kelly, J., dissenting); *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 186; 615 NW2d 702 (2000) (Kelly, J., concurring in part and dissenting in part); *Koontz v Ameritech Services, Inc*, 466 Mich 304, 325; 645 NW2d 34 (2002) (Kelly, J., dissenting); *Karaczewski v Farbman Stein & Co*, 478 Mich 28, 46; 732 NW2d 56 (2007) (Kelly, J., dissenting). Yet this approach replaces the rule of law by the rule of men, which is the very peril we believe that courts are expected to stand against. We will continue to do so.

11

## IV. TERMS OF THE CONTRACT

In the interests of judicial efficiency, because we hold that the one-year contractual limitations period was not automatically tolled by filing a claim, we address the trial court's other bases for granting summary disposition. The trial court held that the contract was ambiguous because it did not define "legal action," and the trial court was persuaded by plaintiff's assertion that she thought contacting an attorney, who then sent a letter to defendant, constituted "legal action." We disagree. The phrase "a legal action" undisputedly means "a lawsuit." *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 554-555; 640 NW2d 256 (2002); see also *United States v El-Ghazali*, 142 Fed Appendix 44, 46 (CA 3, 2005) (citing numerous cases and dictionaries and concluding that "[t]he widespread use of the word 'action' in both the civil and criminal context refutes [the defendant's] argument that there is disagreement among reasonable people as to the meaning of 'legal actions'"); Black's Law Dictionary (6th ed) (defining "action" by noting that the "[t]erm in its usual legal sense means a lawsuit brought in a court"). Even if plaintiff herself thought that contacting an attorney was a "legal action," her attorney, once contacted, would have understood that "legal action" is synonymous with "lawsuit." See, e.g., *Michigan Millers Mut Ins Co v Bronson Plating Co*, 445 Mich 558, 568; 519 NW2d 864 (1994), overruled in part on other grounds by *Wilkie v Auto-Owners Ins Co*, 469 Mich 41 (2003). Therefore, we conclude that the trial court erred in ruling that the phrase "legal action" was ambiguous.

12

The trial court also held that the one-year time limit was unreasonable, concluding that the present case was directly analogous to *Rory*. We agree that the facts of *Rory* are squarely on point with this case, and for the same reason that we reversed the Court of Appeals decision in *Rory*, we decline to rewrite the parties' contract here.

## V. EQUITABLE RELIEF

The trial court also held that defendant was estopped from seeking enforcement of the one-year limitations provision because of its "conduct in the case at bar which resulted in numerous delays." Defendant concedes that the traditional contract doctrines of waiver and estoppel are still viable and that nothing in *Rory* or *Devillers* changed basic contract law. Equitable tolling, unlike judicial tolling, has a legal basis arising out of our common law, and it may be invoked when traditional equitable reasons compel such a result.[4] However, defendant argues that neither doctrine should be applied under the present facts. We agree with defendant.

"A waiver is a voluntary relinquishment of a known right." *Dahrooge v Rochester German Ins Co*, 177 Mich 442, 451-452; 143 NW 608 (1913). Neither

_____

[4] Justice Kelly asserts that a claim of waiver or estoppel requires "'wider ranging investigation and proof'" than a claim that judicial tolling applies. *Post* at 5, quoting 17 Couch, Insurance, 3d, § 238:1, pp 238-8 to 238-9. However, the difficulty of proving waiver or estoppel is immaterial to the question whether the law, as agreed to by the parties themselves, requires enforcement of the one-year provision. It is not for this Court to conjure up new laws whenever we believe that such might be more favorable to one party or another.

13

party disputes that waiver is inapplicable here because defendant did not voluntarily relinquish its right to enforce the one-year time limit. For equitable estoppel to apply, plaintiff must establish that (1) defendant's acts or representations induced plaintiff to believe that the limitations period clause would not be enforced, (2) plaintiff justifiably relied on this belief, and (3) she was prejudiced as a result of her reliance on her belief that the clause would not be enforced. See *Grosse Pointe Park v Michigan Muni Liability & Prop Pool*, 473 Mich 188, 204, 224; 702 NW2d 106 (2005) (opinions by Cavanagh, J., and Young, J.); *Dahrooge, supra* at 452. The trial court's factual finding that defendant caused delays is insufficient to grant estoppel because there is no evidence that plaintiff relied on anything defendant did or said. To the contrary, plaintiff's attorney clearly expressed an awareness of the cutoff date, acknowledging it in his May 10, 2002, letter. He also pursued the claim in August when, not having heard from the claims representative for some time, he sent a letter stating that he needed to know what the settlement decision was so he could "determine if I need to sue Farm Bureau or not." Defendant responded by sending written confirmation of the settlement decision.

Finally, plaintiff's assertion that she relied on *Tom Thomas* and delayed bringing suit because she thought the one-year limitation was tolled is not a reason to estop defendant, because defendant's "acts or representations" did not induce plaintiff's delay. *Grosse Pointe Park*, *supra* at 204, 224. Therefore, we find that waiver or estoppel did not operate to entitle plaintiff to summary disposition.

14

## VI. RETROACTIVITY

Plaintiff asserts that if *Tom Thomas* is overruled, we should apply our holding prospectively only because her counsel, relying on *Tom Thomas*, believed that the limitations period was tolled by his filing the claim. We need not reach the issue in this case, however. Although the general rule is that our decisions are given full retroactive effect, this Court has indicated that prospective application may be warranted if "injustice might result from full retroactivity." *Pohutski v City of Allen Park*, 465 Mich 675, 696; 641 NW2d 219 (2002). In this case, when plaintiff's counsel notified defendant of the claim, he expressly acknowledged that the limitations period would expire on November 29, 2002. Therefore, counsel's post hoc assertions of reliance are belied by his own communications to defendant that indicated he did not expect tolling to occur. Because plaintiff's attorney did not rely on *Tom Thomas*, no injustice would result from applying our decision to plaintiff. Accordingly, even if reliance on *Tom Thomas* justified prospective application in general, the facts specifically presented in this case do not warrant that application.

## VII. CONCLUSION

When interpreting insurance contracts, standard contract laws apply. *Tom Thomas* erroneously refused to read the parties' unambiguous contract as written and, for this reason, has been overruled. Because the contract in this case unambiguously and not unreasonably required suit to be filed within one year of the accident, defendant properly denied the claim when plaintiff failed to meet that

deadline. Standard contract doctrines remain, and waiver or estoppel may be applied if the facts support it. Plaintiff has not shown any reliance on the conduct of or statements by defendant, however, so estoppel does not relieve plaintiff of the duty to timely file suit. We reverse the judgment of the Court of Appeals and remand this matter to the trial court for entry of summary disposition in favor of defendant.

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

MARY ELLEN McDONALD,

      Plaintiff-Appellee,

v                                 No. 132218

FARM BUREAU INSURANCE
COMPANY,

      Defendant-Appellant.

_____

WEAVER, J. (*dissenting*).

I dissent from the erroneous decision of the majority of four (Chief Justice Taylor and Justices Corrigan, Young, and Markman) to extend its unjust and unfair holdings in *Rory v Continental Ins Co*, 473 Mich 457; 703 NW2d 23 (2005), and *Devillers v Auto Club Ins Ass'n*, 473 Mich 562; 702 NW2d 539 (2005), to the facts of this case. Rather than join the injustice of the majority opinion, I concur fully with, and join in, Justice Kelly's thoughtful dissenting opinion. I vote to affirm the Court of Appeals judgment, which affirmed the trial court's decision to deny defendant's motion for summary disposition and grant the plaintiff's motion for summary disposition.

As it did in *Rory*[1] and *Devillers*,[2] the majority of four continues to overrule and undermine years of this Court's well-developed and sound jurisprudence that has guided lower courts in cases involving disputes about insurance coverage. Under the guise of enforcing contracts as written, the majority abolishes judicial tolling of limitations periods in insurance contracts, a doctrine of fairness that has been in place since 1976, when this Court decided *Tom Thomas Org, Inc v Reliance Ins Co,* 396 Mich 588; 242 NW2d 396 (1976). The majority of four now overrules *Tom Thomas*, explaining that insurance contracts are not open to judicial construction.

However, as I explained in my dissent in *Rory*,[3] an insurance contract is a unique form of contract that requires specialized rules of construction because the individual terms and clauses of an insurance contract are not typically subject to negotiation. In *Rory*, I stated:

> These specialized rules recognize that an insured is not able to bargain over the terms of an insurance policy; indeed, it is

---

[1] In *Rory*, the majority of four first held that insurance contracts are to be enforced using the same legal principles that are applied to any other contract. The *Rory* holding overruled at least 50 years of this Court's precedent outlining how lower courts were to construe insurance-contract provisions using specialized interpretive rules.

[2] In *Devillers*, the majority of four overruled *Lewis v Detroit Automobile Inter-Ins Exch*, 426 Mich 93; 393 NW2d 167 (1986), a case that had allowed judicial tolling of the no-fault one-year-back provision of MCL 500.3145(1). Despite the practical hardships that the majority's decision would inflict upon the insureds who had relied on the judicial tolling doctrine under *Lewis*, the majority gave its decision retroactive effect.

[3] *Rory*, 473 Mich at 516.

common practice for the insured to receive the actual terms of the contract, the insurance policy itself, only *after* having purchased the insurance. Further, in most cases the average consumer will not read the policy; the consumer will rely on the agent's representations of what is covered in the policy. Even if the insured were to read the policy, insurance policies are not easy to understand and contain obscure provisions, the meaning of which requires legal education to grasp.[4]

The doctrine of judicial tolling in insurance contracts is one of the specialized rules of equity that acknowledge and account for the difference in bargaining power, or lack thereof, between an insured and an insurer. As Justice Kelly aptly states, "it is a pragmatic doctrine that is fair to both insurers and insureds."[5] By extending its decision from *Devillers*[6] to overrule *Tom Thomas*, the majority of four does away with a doctrine that allowed for fairness in the insurance-claim

---

[4] *Id.* at 516-517.

[5] *Post* at 2.

[6] I note that the majority is extending its decision from *Devillers* and not, as the majority alludes, *ante* at 8-9, simply restating its position from *Devillers*. The resolution of *Devillers* hinged on statutory interpretation. The instant case involves contractual interpretation. Thus, any statements made in *Devillers* regarding contractual interpretation were dicta and not binding on this case. If the majority in *Devillers* intended to create a one-size-fits-all rule of law to apply no matter what set of facts is before a court, then the majority was legislating from the bench. Courts interpret laws and apply the laws to the facts before them. The Court of Appeals correctly applied the law from *Tom Thomas* to the facts of this case because this case involves an insurance contract, for which *Tom Thomas* was binding precedent. The Court of Appeals followed the precedent of *Tom Thomas* and Court of Appeals precedent distinguishing *Devillers*'s statutory interpretation from cases involving the interpretation of contracts, such as *West v Farm Bureau Gen Ins Co of Michigan (On Remand)*, 272 Mich App 58; 723 NW2d 589 (2006). When the majority criticizes the Court of Appeals for "blindly following *West*'s questionable disregard for *Devillers*'s clear statement," *ante* at 8, the majority

(continued…)

3

negotiation process and leaves nothing in its place to ensure that insurers promptly take action to afford their insureds reasonable time to make decisions regarding legal action or the settlement of claims.

In this case, the latest example of the majority of four's judicial activism in no-fault insurance cases, the majority of four abolishes judicial tolling of contractual limitations periods for insurance contracts. In doing so, the majority of four overrules more than 30 years of this Court's precedent. Or, to borrow the majority's rhetoric, the majority of four has replaced the "rule of law"[7] with the "rule of four justices." Accordingly, I dissent.

Elizabeth A. Weaver

---

(…continued)
shows a complete disregard for the basic proposition that different sets of facts necessitate different analyses of laws.

[7] *Ante* at 11.

STATE OF MICHIGAN

SUPREME COURT

MARY ELLEN McDONALD,

Plaintiff-Appellee,

v                                                                                    No. 132218

FARM BUREAU INSURANCE
COMPANY,

Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

I dissent from the majority's decision to abolish the use of the judicial

tolling[1] doctrine adopted by this Court more than 30 years ago in *Tom Thomas*.[2]

Michigan courts have applied judicial tolling without serious contention for more

_____

[1] What I call "judicial tolling" is often also referred to as "equitable tolling" and "intervening tolling." See *In re Certified Question* (*Ford Motor Co v Lumbermens Mut Cas Co*), 413 Mich 22, 30; 319 NW2d 320 (1982); Feldman, Zariski & Eaton, *The equitable tolling doctrine in first party insurance coverage matters: Analysis, benefits, and an illustrative case study*, 41 Tort Trial & Ins Prac L J 61 (2005).

Insurance policies often include a limitation-of-suit provision that bars the insured from bringing an action for coverage unless the suit is filed within a certain period. These provisions may shorten the time an insured would otherwise have to file suit under state law. Judicial tolling suspends the elapse of time under the limitation-of-suit provision from the date the insured gives notice of the loss until the insurer formally denies liability. Feldman, Zariski & Eaton, 41 Tort Trial & Ins Prac L J at 61-63.

[2] *Tom Thomas Org, Inc v Reliance Ins Co,* 396 Mich 588; 242 NW2d 396 (1976).

than three decades because it is a pragmatic doctrine that is fair to both insurers and insureds. It does not create insurance coverage where none exists. Nor does it deprive insurers of other defenses they might have. Rather, it encourages insureds to give prompt notice of their claims to their insurers. And it eliminates any incentive insurers might have to wait until the contractual limitations period expires before denying claims.

## THE JUDICIAL TOLLING DOCTRINE

Thirty-two years ago, in the *Tom Thomas* case, this Court construed an inland marine insurance policy that contained a 12-month limitations period.[3] We noted that, although a 12-month period might "represent a reasonable balance between the insurer's interest in prompt commencement of action and the insured's need for adequate time to bring an action, the insured usually does not have the full 12 months within which to commence an action."[4] In fact, because of delays built into standard insurance policies, an insured usually has substantially less time to decide whether to commence an action against an insurer. These delays include the time dedicated to filing a proof of loss and the period allowed for payment or settlement of the claim.[5]

To reconcile the proof-of-loss and payment-of-claims provisions with the

---

[3] *Id.* at 591.

[4] *Id*. at 592.

[5] *Id*.

2

limitations provision, this Court adopted the approach of the New Jersey Supreme Court. It allows the contractual period of limitations in which to bring a lawsuit against an insurance company to run until the insured gives notice of a claim to the insurer. Then, the limitations period is tolled until the insurer formally denies liability.[6] The New Jersey court found that this was the best way to give effect to "the literal language of the limitation provision . . . ."[7]

For good reason, Michigan and New Jersey are not alone in having adopted the tolling doctrine.[8] Asthe leading treatise on insurance law, Couch on Insurance, states, those courts' adoption of the tolling doctrine

> stems from the pragmatic knowledge that there simply is no reason to bring suit until the insurer has either formally denied the claim or delayed so long that the delay itself becomes the basis for a suit. This rule also avoids the possibility that the insurer may drag out negotiations while the period passes, leading either to insureds losing their rights in a questionable manner or to costly evidentiary battles over whether the insureds' actions should be deemed to be a waiver of the defense, or to estop the insurer from raising it.[9]

---

[6] *Id.* at 593-597, citing *Peloso v Hartford Fire Ins Co*, 56 NJ 514; 267 A2d 498 (1970).

[7] *Peloso*, 56 NJ at 521.

[8] See *Guam Housing & Urban Renewal Auth v Dongbu Ins Co, Ltd*, 2001 Guam 24; 2001 WL 1555206 (2001); *Prudential-LMI Commercial Ins v Superior Court*, 51 Cal 3d 674; 274 Cal Rptr 387; 798 P2d 1230 (1990); *Fed S&L Ins Corp v Aetna Cas & Surety Co*, 701 F Supp 1357, 1362 (ED Tenn, 1988); *Nicholson v Nationwide Mut Fire Ins Co*, 517 F Supp 1046, 1051 (ND Ga, 1981); *Christiansen v First Ins Co of Hawaii, Ltd*, 88 Hawaii 442; 967 P2d 639 (Hawaii App, 1998), aff'd in part, rev'd in part on other grounds, 88 Hawaii 136 (Hawaii, 1998); *Clark v Truck Ins Exch*, 95 Nev 544, 546-547; 598 P2d 628 (1979).

[9] 17 Couch, Insurance, 3d, § 237:39, p 237-45.

The majority's decision to abolish the judicial tolling doctrine inserts insureds between Scylla and Charybdis. If they bring a claim too soon, the court may dismiss it as unripe. If they wait for the insurer to decide their claim, they risk a technical forfeiture under a limitation-of-suit provision.

An insured should not be forced to choose between filing a premature lawsuit and trusting that the insurance company will consider the claim after the contractual limitations period has expired. Choosing the first option may unnecessarily poison the relationship between the parties. It may create unnecessary litigation that serves only to burden our overtaxed judicial system. Such a result has been accurately called both "anomalous and inefficient."[10] Yet choosing the second option gives insurance companies the opportunity to avoid coverage on timeliness grounds.

Under the majority's decision, the insured must not only file a timely claim, he or she may have to make the hard decision to sue rather than await a reply. Absent judicial tolling, the burden on the insured is greatly increased.

On the contrary, use of the judicial tolling doctrine guarantees that the insurer shares the burden. The insurer must pay or deny the claim. The doctrine has other merits. Under it, the insured has no reason to delay filing a claim because the limitations period will not run uninterrupted. And the insurer can take the necessary time to investigate the claim and decide on coverage while relevant

---

[10] *Guam Housing*, 2001 Guam 24 at 11.

information is fresh. Removed is any incentive the insurer would have in the absence of tolling to prolong the investigation period "in order to invoke a technical forfeiture of the policy's benefits."[11] Thus, use of the judicial tolling doctrine promotes the quick resolution of insurance claims outside the courts.

It has been argued that the judicial tolling doctrine is unnecessary, given the availability of waiver and estoppel. It is asserted that these doctrines can alleviate the harsh result that may occur when an insured allows the insurer to adjust the claim after the limitations period expires. However, Couch on Insurance opines that assertion of a claim of waiver or estoppel

> may require a discovery and evidentiary side trip from the substance of the underlying dispute between the parties to establish who said and did what, when, and to whom. While this may be the plaintiff's last hope of being able to bring the underlying action, in which case the added effort and expense may still make it worthwhile, it generally calls for a wider ranging investigation and proof than would be required for a claim that the same actions effectively "tolled" the period for some time.[12]

Moreover, as *Tom Thomas* recognized, reliance on the application of waiver or estoppel results in considerable uncertainty about how much time is reasonable to allow the insurer to bring suit.[13] Conversely, under the judicial tolling doctrine, the insurance company "can conclusively determine exactly when

---

[11] *Id*. at 12.

[12] 17 Couch, Insurance, 3d, § 238:1, pp 238-8 to 238-9.

[13] *Tom Thomas*, 396 Mich at 597 n 10.

the tolling period will terminate simply by denying the claim after it completes its investigation."[14]

The majority's attempt to return the parties to the certainty of the contractual language actually leaves them in a state of greater uncertainty. As stated more than 30 years ago by the New Jersey Supreme Court in *Peloso*, judicial tolling "is more satisfactory, and more easily applied, than the pursuit of the concepts of waiver and estoppel in each of the many factual patterns which may arise."[15]

## *RORY*[16] AND *DEVILLERS*[17]

*Tom Thomas,* the case in which this Court first adopted the judicial tolling doctrine, was recently discussed in *Rory* and *Devillers.* In *Rory,* the same Supreme Court majority as the one in this case held that judicial assessments of reasonableness cannot be relied on to invalidate a shortened period of limitations contractually agreed to.[18] In so holding, the majority overruled *Tom Thomas* to the extent that *Tom Thomas* allowed a standard of reasonableness to abrogate unambiguous contractual terms.[19] However, the *Rory* majority specifically

---

[14] Feldman, Zariski & Eaton, 41 Tort Trial & Ins Prac L J at 77 (2005).

[15] *Peloso*, 56 NJ at 521.

[16] *Rory v Continental Ins Co*, 473 Mich 457; 703 NW2d 23 (2005).

[17] *Devillers v Auto Club Ins Ass'n*, 473 Mich 562; 702 NW2d 539 (2005).

[18] *Rory*, 473 Mich at 470.

[19] *Id*.

recognized that the judicial tolling doctrine was the basis for the *Tom Thomas* decision, not whether the contractual limitations period in which to bring suit was reasonable.[20] Thus, although *Rory* rejected *Tom Thomas* to the extent that it relied on the "reasonableness" rule, it did not specifically overrule the judicial tolling doctrine.

*Devillers* concerned the tolling of a statutory one-year period in which to bring claims, MCL 500.3145(1).[21] The same majority as the one in this case reasoned that no authority permitted the judiciary to provide for a tolling of the statutory period.[22] According to the majority, judicial tolling, as applied to the *Devillers* case, represented "an unconstitutional usurpation of legislative authority."[23] In the case at bar, a contractual rather than a statutory period of limitations is at issue. Application of the doctrine of judicial tolling cannot be said to present an issue of usurpation of legislative authority. Consequently, neither *Rory* nor *Devillers* controls this case.

It is interesting to note that one of the explanations given in *Devillers* for rejecting judicial tolling was the alleged lack of a sound policy reason for its use there. However, such a reason exists in this case. The Michigan Office of

---

[20] *Id.* at 466.

[21] *Devillers*, 473 Mich at 564.

[22] *Id.* at 581-583.

[23] *Id.* at 593.

7

Financial and Insurance Services (OFIS)[24] has now prohibited the use of contractual one-year limitations periods in insurance contracts that provide for uninsured motorist benefits.[25] OFIS found the Court of Appeals analysis in *Rory* compelling, although it was overturned by a majority of this Court.[26] The Court of Appeals had found that a one-year limitations period is unreasonable because it does not provide claimants with sufficient time to investigate potential claims.[27] As noted by the majority, OFIS has allowed insurance companies to continue using policy provisions that became part of contracts with insureds before the OFIS order of prohibition entered. However, the reasoning adopted in the order of prohibition still persuasively suggests that application of the one-year period in this case is against public policy.

The majority believes that courts must stand against the peril of rule by men instead of law. I agree. Yet I also believe that courts must stand against the peril of injustice, because injustice undermines the rule of law. If the process we

---

[24] OFIS is now the Office of Financial and Insurance Regulation, effective April 6, 2008. Executive Order No. 2008-2.

[25] OFIS Order No. 05-060-M, entered December 16, 2005. On April 4, 2006, OFIS issued a similar order addressing underinsured motorist benefits. And, in May 2007, OFIS added an administrative rule voiding shortened limitation-of-action clauses in new and revised policies. Mich Admin Code, R 500.2212.

[26] OFIS Order No. 05-060-M, pp 2-4, citing *Rory v Continental Ins Co*, 262 Mich App 679; 687 NW2d 304 (2004), rev'd *Rory*, 473 Mich at 491.

[27] *Rory*, 262 Mich App at 685-687.

8

adopt for determining liability allows absurdity to reign and inequity to prevail, people will look outside the rule of law for the "justice" they demand.

All too often, the same Supreme Court majority as that in this case dismisses legitimate legal arguments by labeling them contrary to the "plain language" of a statute or contract. But no matter how it is labeled, a rose is still a rose. In this case, the law in effect when the parties entered into their contract required judicial tolling. The one-year limitation-of-suit provision was not valid. To take from either party the benefit of that rule of law undermines the rule of the law.

The majority appears to conclude that, because *Rory* and *Devillers* criticized *Tom Thomas*, the decision in this case overturns no precedent. It takes the position that the judicial tolling doctrine is no longer good law. For the reasons stated earlier, I disagree.

Judicial tolling of a contractually shortened period of limitations was not directly overruled in *Rory* or in *Devillers*. It promotes the efficient and effective resolution of insurance claims, and it is fair to insurers and their insureds. Therefore, I would affirm the Court of Appeals decision that the limitations period in plaintiff's contract with defendant was tolled by plaintiff's May 10, 2002, letter

to defendant until defendant denied plaintiff's claim on December 10, 2002.[28]

PROSPECTIVE APPLICATION

It is presumably because the majority believes that *Tom Thomas* has already been overruled that it fails to articulate its reasons not to adhere to stare decisis in this case. It recognizes that the question whether today's decision should apply only prospectively is a legitimate issue. But it declines to address the question because plaintiff's counsel acknowledged that plaintiff was aware of the contractual limitations period before it expired.

I disagree with the majority's conclusion that acknowledgement of the existence of the contractual provision is equivalent to an admission that counsel did not expect tolling to occur. The acknowledgement was most likely intended to accelerate the processing of the claim. In any event, when he wrote it, counsel had good reason to expect that the judicial tolling doctrine this Court had endorsed for many years would continue to be applied. He was entitled to rely on the doctrine when deciding to allow the insurance company to adjust plaintiff's claim without regard to the limitation-of-suit contractual provision. Thus, I conclude that the majority errs when it refuses to address whether today's decision should be given prospective application only.

---

[28] To the extent that the Court of Appeals concluded in this case and in *West v Farm Bureau Gen Ins Co of Michigan* (*On Remand*), 272 Mich App 58; 723 NW2d 589 (2006), that *Rory* and *Devillers* effectively abrogated the judicial tolling doctrine of *Tom Thomas*, I disagree.

10

Finally, plaintiff asserts that her claim should go forward even if this Court rejects the continued viability of judicial tolling and gives that decision retroactive effect. She contends that defendant should be estopped from asserting the one-year limitations period. She points out that the trial court found that defendant engaged in dilatory conduct in processing her claim. The trial court relied on the facts that defendant (1) required plaintiff to send interrogatories to the tortfeasor to determine if he was collectible before defendant would respond to the claim, (2) required that plaintiff not settle with the tortfeasor until defendant approved the settlement, and (3) after approving the settlement, purposefully failed to communicate with plaintiff to negotiate her claim in good faith.

With regard to the last allegation, defendant's claims representative noted in an internal status report approximately one month before the limitations period expired: "1 yr runs 11-29-02." Then, the claims representative took no further action on the file until after that date had passed. The next action taken was to notify plaintiff's attorney that the claim was being rejected because the one-year period of limitations had expired. Notably, defendant's claims representative admitted that she had access to the information necessary to determine the value of plaintiff's claim before the limitations period expired, but neglected to act on it.

> "It is a familiar rule of law that an estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other

11

rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts."[29]

The facts of this case are an example of exactly what the judicial tolling doctrine was adopted to prevent. Plaintiff had every reason to expect that her claim would be processed once she had taken all the steps requested by defendant. Instead, defendant refrained from processing the claim and making a decision about it until after the one-year limitations period had expired. By sitting on plaintiff's claim, defendant invoked a technical forfeiture of the policy's benefits. A majority of the justices of this Court has allowed itself to be made a willing after-the-fact accomplice to defendant's wrongdoing.

In August 2002, plaintiff's counsel inquired of the claims representative whether she had heard if the tortfeasor's 401(k) plan was protected from creditors. The information was relevant to whether defendant would grant permission to plaintiff to settle with the tortfeasor. Plaintiff's counsel requested that he be informed of the answer so he could decide whether to sue defendant. In response, defendant advised plaintiff that it was granting permission to settle the claim against the tortfeasor. This was the last communication between the parties until defendant notified plaintiff's counsel that the one-year period had expired.

Granting permission to plaintiff to settle with the tortfeasor could easily have led plaintiff's counsel to believe that defendant was still adjusting the claim.

---

[29] *Hetchler v American Life Ins Co*, 266 Mich 608, 613; 254 NW 221 (1934), quoting *Kole v Lampen*, 191 Mich 156, 157-158; 157 NW 392 (1916).

It likely lulled him into believing that defendant would not enforce the limitations period. Defendant's silence, knowing that this was likely plaintiff's belief, caused plaintiff to reasonably believe something that was not true.

Given the state of the law at the time, plaintiff relied on this belief: judicial tolling prevented plaintiff's claim from being lost due to the passage of time. For estoppel to apply, it was not necessary that plaintiff take any affirmative action in reliance on the beliefs that defendant induced in plaintiff. "Nonaction in reliance [on the representations made], resulting in injury, is sufficient."[30] Obviously, under the majority's position that judicial tolling is impermissible, plaintiff was prejudiced as a result of her reliance on the false belief induced by defendant's silence. Thus, plaintiff has shown the facts necessary to establish estoppel.[31] Contrary to the decision of the majority, the trial court correctly held that defendant should be "estopped from seeking shelter in the one-year limitation given their conduct in the case at bar . . . ." Accordingly, I conclude in the alternative that equitable estoppel entitled plaintiff to summary disposition.

---

[30] *Hetchler*, *supra* at 614.

[31] *Id*. at 613; *Grosse Pointe Park v Michigan Muni Liability & Prop Pool*, 473 Mich 188, 204; 702 NW2d 106 (2005); see also *Barbour v Slaughter*, 36 Ill App 3d 857, 862-863; 345 NE2d 113 (1976) (holding that, by arbitrarily withholding consent to the insured's personal-injury suit, the insurer waived the

(continued…)

13

CONCLUSION

Judicial tolling is a pragmatic doctrine that promotes fairness, efficiency, and certainty in the claims-adjustment process.  It has been used in this and other states for more than 30 years.  The majority's decision to abolish the doctrine in Michigan should be lamented by both insurers and their insureds.  Because neither *Rory* nor *Devillers* expressly overruled the use of judicial tolling in the circumstances presented in this case, I would hold that the trial court properly applied the judicial tolling doctrine.  Moreover, even if the doctrine cannot be used to save plaintiff's claim, I would hold that defendant is estopped from relying on the contractually shortened period of limitations.

I would affirm the decisions of the lower courts in favor of plaintiff.


Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver

---

(…continued)
policy requirement that no judgment be taken against the tortfeasor without the insurer's consent).

14